PD-0836-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/6/2015 2:02:07 PM
Accepted 7/7/2015 3:39:48 PM
ABEL ACOSTA
CLERK

No. 14-13-00208-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

JONATHAN ALBERT LEAL,                                         Appellant

v.

THE STATE OF TEXAS,                                           Appellee

Appeal from Galveston County

\*   \*   \*   \*   \*

STATE'S PETITION FOR DISCRETIONARY REVIEW

\*   \*   \*   \*   \*

FILED IN
COURT OF CRIMINAL APPEALS

July 7, 2015

ABEL ACOSTA, CLERK

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney
Bar I.D. No. 24031632

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

* The parties to the trial court's judgment are the State of Texas and Appellant, Jonathan Albert Leal.

* The trial Judge was Hon. John Ellisor.

* Counsel for the State at trial were Daniel Eugene Lazarine, Jennifer Stabe, and Jared Robinson, Galveston County Justice Center, 600 59th Street, Suite 1001, Galveston, Texas 77511.

* Counsel for the State before the Court of Appeals was Allison Lindblade, 600 59th Street, Suite 1001, P.O. Box 17254, Galveston, Texas 77551.

* Counsel for the State before the Court of Criminal Appeals is Stacey M. Goldstein, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711.

* Counsel for Appellant at trial and before the Court of Appeals was Hon. Mark W. Stevens, P.O. Box 8118, Galveston, Texas 77553.

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . 2-3

GROUNDS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1.      **Is a challenge to a warrantless blood draw under TEX. TRANS. CODE § 724.012(b)(3)(B) preserved for review when Appellant did not explain the impact of *Missouri v. McNeely* in his suppression motion or at trial but did so later on rehearing?**

2.      **Is a warrantless, mandatory blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b)(3)(B)—the repeat offender provision— reasonable under the Fourth Amendment?**

3.      **Do the federal and state (TEX. CODE CRIM. PROC. art. 38.23) exclusionary rules require suppression when, at the time of the search, the warrantless blood draw was authorized by TEX. TRANS. CODE § 724.012(b)(1)(A) and binding caselaw?**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-11

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

APPENDIX A (Opinion of the Court of Appeals After Remand)

i

APPENDIX B (Opinion of the Court of Appeals on Original Submission)

APPENDIX C (Amended Motion to Suppress)

# INDEX OF AUTHORITIES

## Cases

*Aliff v. State*, 627 S.W.2d 166 (Tex, Crim. App. 1982).. . . . . . . . . . . . . . . . . . . 9 n.7

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002).. . . . . . . . . . . . . . . . 7 n.4

*Bishop v. State*, 85 S.W.3d 819 (Tex. Crim. App. 2002).. . . . . . . . . . . . . . . . . 8 n.6

*Buchanan v. State*, 207 S.W.3d 772 (Tex. Crim. App. 2006). . . . . . . . . . . . . . 10 n.9

*Cole v. State*, PD-0077-15 (granted Apr. 22, 2015).. . . . . . . . . . . . . . . . 11, 11 n.12

*Douds v. State*, PD-0857-14 (granted Sept. 17, 2014; argued and submitted Mar. 18, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Eisenhauer v. State*, 754 S.W.2d 159 (Tex. Crim. App. 1988). . . . . . . . . . . . . . 8 n.6

*Heidelberg v. State*, 144 S.W.3d 535 (Tex. Crim. App. 2004). . . . . . . . . . . . . 10 n.9

*Holidy v. State*, No. PD-0622-14 (granted Aug. 20, 2014; argued and submitted Jan. 14, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . 7 n.4

*Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . 9 n.8

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992).. . . . . . . . . . . . . . . . 7

*Leal v. State*, 456 S.W. 567 (Tex. Crim. App. 2015).. . . . . . . . . . . . . . . . 2, 6 n.3, 10

*Leal v. State*, 452 S.W.3d 14 (Tex. App.—Houston [14th] 2014).. . . . . 2, 5 n.5, 5-6

*Leal v. State*, __ S.W.3d __, No. 14-13-00208-CR, 2015 Tex. App. LEXIS 6460 (Tex. App.—Houston [14th] 2015) (op. on remand). . . . . . . . . . . . . . . . . . . . . . . 2-3, 10

*Lovill v. State*, 319 S.W.3d 687 (Tex. Crim. App. 2009).. . . . . . . . . . . . . . . 8 n.5, 9

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

*Pena v. State*, 285 S.W.3d 459 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . 8 n.5

*Pesina v. State*, 676 S.W.2d 122 (Tex. Crim. App. 1984). . . . . . . . . . . . . . . . . . 9 n.7

*Reeder v. State*, No. PD-0601-14 (granted Aug. 20, 2014; argued and submitted Jan. 15, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*State v. Villarreal*, No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014, reh'g granted). . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 10 n.11

*Weems v. State*, No. PD-0635-14 (granted Aug. 20, 2014; argued and submitted Nov. 17, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11 n.12

*Williams v. State*, 773 S.W.2d 525 (Tex. Crim. App. 1988). . . . . . . . . . . . . . . . 9 n.8

**Statutes**

TEX. CODE CRIM. PROC. art. 38.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

TEX. TRANS. CODE § 724.012(b)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Rule**

TEX. R. APP. P. 33.1(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Act**

Acts 2009, 81st Leg., ch. 1348, § 18, eff. Sept. 1, 2009. . . . . . . . . . . . . . . . . . . 7

No. 14-13-00208-CR

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS


JONATHAN ALBERT LEAL, Appellant

v.

THE STATE OF TEXAS, Appellee


Appeal from Galveston County


* * * * *

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State Prosecuting Attorney respectfully urges this Court to grant review.

**STATEMENT REGARDING ORAL ARGUMENT**

The State does not request oral argument.

**STATEMENT OF THE CASE**

Appellant's blood was drawn pursuant to the repeat offender mandatory draw provision. *See* TEX. TRANS. CODE § 724.012(b)(3)(B). Before trial, he filed an amended motion to suppress, arguing that the repeat-offender provision is

1

unconstitutional and that the then-pending case of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), may impact the legality of the warrantless draw. Appendix C; 1 CR 79. After a hearing, during which only the validity of the stop was litigated, the trial court denied Appellant's motion. *See, generally*, 3 RR 59-119. Appellant objected at trial to the admission of the blood test results citing his prior objections. 4 RR 92. A jury subsequently found Appellant guilty of felony DWI, and the trial court sentenced him to eight years' imprisonment but suspended the sentence and granted community supervision. The Supreme Court then rendered its decision in *McNeely*, and Appellant moved for a new trial, again challenging the statutorily compelled blood draw. 7 RR 4-26; 1 CR 145. The trial court denied the motion after a hearing. 7 RR 4-26; 1 CR 47.

**STATEMENT OF PROCEDURAL HISTORY**

The majority of the court of appeals reversed the trial court's denial of Appellant's motion for new trial. *Leal v. State*, 452 S.W.3d 14 (Tex. App.—Houston [14th] 2014). This Court refused the State's PDR but granted review on its own motion and remanded for the court of appeals to decide whether Appellant properly preserved review. *Leal v. State*, 456 S.W. 567 (Tex. Crim. App. 2015). The court of appeals held that Appellant's claim was preserved and reversed again based on its previous decision. *Leal v. State*, __ S.W.3d __, No. 14-13-00208-CR, 2015 Tex. App.

2

LEXIS 6460 (Tex. App.—Houston [14th] 2015) (op. on remand).

## GROUNDS FOR REVIEW

1. **Is a challenge to a warrantless blood draw under TEX. TRANS. CODE § 724.012(b)(3)(B) preserved for review when Appellant did not explain the impact of *Missouri v. McNeely* in his suppression motion or at trial but did so later on rehearing?**

2. **Is a warrantless, mandatory blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b)(3)(B)—the repeat offender provision— reasonable under the Fourth Amendment?**

3. **Do the federal and state (TEX. CODE CRIM. PROC. art. 38.23) exclusionary rules require suppression when, at the time of the search, the warrantless blood draw was authorized by TEX. TRANS. CODE § 724.012(b)(1)(A) and binding caselaw?**

## ARGUMENT

**1. Appellant failed to properly preserve his challenge to the mandatary blood draw.**

**A. Suppression Motion**

Before trial, Appellant filed an amended motion to suppress challenging the mandatory blood draw.[1]  Appendix C; 1 CR 79.  He argued, "Sec. 724.011 is unconstitutional on its face and as applied, as a violation of U.S. Constitution, Amend. VIII, which prevents unreasonable searches and seizures."  Appendix C; 1 CR 79. Immediately following, he asserted:

---

[1]  It also reasserted the grounds presented in his first motion to suppress, which challenged the validity of the stop.  1 CR 27-28.

3

The matter is presently under review before the U.S. Supreme Court. *Missouri v. McNeely*, USSC Docket No. 11-1425, was argued on January 9, 2013. Briefly, the Supreme Court of Missouri apparently ruled that a warrantless blood draw violated the Eighth Amendment, and the United States Supreme Court granted cert. The publicly available recording of the arguments before the U.S. Supreme Court . . . suggest that a significant number of justices were openly concerned about the prospect of a government official approaching an unwilling citizen with a needle. Such information is not of course binding or in many instances predictive of the ultimate ruling, but they do suggest that the issue is a close one and should be carefully reviewed before this court commits resources to a trial which may be fatally flawed from the beginning.

Appendix C; 1 CR 79. The trial court held a hearing, during which only the validity of the stop was actively litigated. *See, generally*, 3 RR 59-119. The trial court denied Appellant's motion. 3 RR 119; 4 RR 161.

Appellant also objected at trial, citing "all prior objections," when the State proffered the test results. 4 RR 92. The trial court ruled that the evidence was admissible. 4 RR 92.

Finally, before addressing the jury charge, the judge noted his earlier rulings: "I think I've made this ruling on the record. But just in case I didn't, we had a Motion to Suppress Evidence in this case. And there was an amended Motion to Suppress. And after hearing and consideration of the facts and case law, that motion is denied. Thank you." 4 RR 161.

## B. Supplemental New Trial Motion

Relying on the then-new decision in *McNeely*, Appellant filed a supplemental

motion for new trial, claiming for the first time that that there was no consideration by law enforcement as to whether a warrant could have been obtained or the existence of exigent circumstances. 1 CR 145. He also maintained that the mandatory draw provision "unconstitutionally substitutes two prior convictions for any constitutional basis for intrusion into the body."[2] 1 CR 145. Appellant's claims were addressed at a hearing, 7 RR 4-26, and the trial court later denied Appellant's motion. 1 CR 147.

## C. Court of Appeals

A majority of the court of appeals held that Appellant's Fourth Amendment challenge to the blood draw was both timely and specific. *Leal*, 2015 Tex. App. LEXIS 6460, at *5-6. It concluded that the trial court implicitly overruled Appellant's amended motion to suppress when it admitted the blood test results over Appellant's trial objection. *Id*. at *4. The majority also held that the trial court's denial of Appellant's supplemental motion for rehearing, filed five days after *McNeely* was decided, also preserved his claim. *Id*. at *5.

Justice Frost concurred. *Id*. at *7 (Frost, J., concurring). Regarding timeliness, he concluded that the Appellant's amended suppression motion, denied *in toto*, preserved the claim. *Id*. at *8. In Justice Frost's view, it was the only suppression

---

[2] As noted by the court of appeals, Appellant's amended motion was untimely; however, the trial court granted Appellant leave to file, and the State did not object. *Leal*, 2015 Tex. App. LEXIS 6460, at *5; 7 RR 8.

motion before the court because it superceded Appellant's first motion; therefore, when remanding this case, this Court erred to state that the suppression hearing pertained to the first motion.[3] *Id.* at \*9-10, \*10-11 n.9. Further, Justice Frost maintained that Appellant's failure to address the issue at the hearing is of no consequence because not all grounds need to be discussed at a hearing to preserve error. *Id.* \*9-10. And there was no express or implied waiver. *Id.* \*12-13. He also observed that Appellant's challenge was specific. *Id.* at \*8. The amended motion asserted that the blood was drawn pursuant to a statute that violates the Fourth Amendment; it is apparent that Appellant's mention of the Eighth Amendment was a mistake. *Id.* at \*8-9.

## D. Analysis

First, Appellant's stark mention of the constitutionality of the statute and *McNeely* in his amended suppression motion were not sufficient to put the trial court on notice of the precise claim he later raised on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring a complaint to be timely and the reason to be made with

---

[3] This Court stated:

"Appellant also filed an amended motion to suppress evidence, challenging the warrantless blood draw on Fourth Amendment grounds. A hearing was held on the motion to suppress complaining of an illegal stop, and the trial court denied the motion. That hearing did not pertain to appellant's amended motion to suppress."

*Leal*, 456 S.W.3d at 568.

6

"sufficient specificity" to make the trial court aware of it). Though Appellant claimed that the statute is unconstitutional, he never made any connection between *McNeely* and the validity of the statute. *McNeely's* sole issue was exigency. By design, it had nothing to with Missouri's implied consent statute (let alone Texas'). *McNeely*, 133 S. Ct. at 1567-68. It would have been difficult for even a seasoned trial judge to conclude, on the basis of Appellant's motion alone, that he was challenging the validity of the statute because, in the absence of exigent circumstances or a warrant, a non-consensual blood draw violates the Fourth Amendment.

Beyond connectivity, the novelty of the controversy increased the need for Appellant to detail, in plain language, why suppression was warranted. *See Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). The repeat offender provision has been in effect since September 1, 2009, Acts 2009, 81st Leg., ch. 1348, § 18, eff. Sept. 1, 2009. Until *McNeely* no one mounted a serious challenge to it under the theory it violates the Fourth Amendment in the absence of exigency or a warrant.[4] The novelty of the issue would have made it nearly impossible for the trial court to frame the issue, as currently understood, for Appellant. Thus, it was crucial for

---

[4] This Court recognized that the statute implicitly dispenses with the warrant requirement. *See State v. Johnston*, 336 S.W.3d 649, 660 (Tex. Crim. App. 2011) ("Chapter 724 of the Texas Transportation Code, which contains Texas' implied consent statutes, governs the State's ability to obtain a breath or blood sample from a DWI suspect when there is no warrant.") (citing *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002)).

7

Appellant to have explained his then-unheard of *McNeely* claim, misnomer notwithstanding.[5] Appellant's broad and seemingly unrelated statements should not be regarded as preserving the claim raised on appeal.[6]

Appellant's supplemental motion for new trial did not preserve review either. This Court has held that an unobjected-to complaint that was apparent during trial is not preserved for appeal when it is raised for the first time in a motion for new trial.

---

[5] *See Lovill v. State*, 319 S.W.3d 687, 692 (Tex. Crim. App. 2009) (when a legal claim is rarely urged, like a selective prosecution claim, the objecting party should invoke the proper federal and state constitutional provisions or use key legal phrases); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (novel argument of greater rights under Texas' due course of law provision was not sufficiently distinguished from the federal Due Process Clause in the trial court).

[6] Even if Appellant's amended motion had been sufficiently specific, contrary to Justice Frost's opinion, the record could be construed as Appellant having abandoned or waived the issue. Because he never argued the issue at the suppression hearing, the judge never explicitly ruled on it. Therefore, the trial judge's statements that he overruled Appellant's motions to suppress could be limited to the validity of the stop issue the trial judge did explicitly resolve. 3 RR 119; 4 RR 161. Depending on how the trial court's statements are construed, there is authority from this Court that may support a contrary determination, however. In *Bishop v. State*, 85 S.W.3d 819, 821-22 (Tex. Crim. App. 2002), this Court stated the trial courts have the authority to dispose of a motion based on the motion alone. *See also Eisenhauer v. State*, 754 S.W.2d 159, 161 (Tex. Crim. App. 1988) (stating that a motion to suppress that raised both federal and state search and seizure provisions was sufficient to preserve state constitutional claim when oral argument covered only the federal constitutional claim).

There is also a question as to whether Appellant's objection to the admission to the blood test results during trial even included his non-specific amended motion to suppress ground. As the State noted in its brief below, State's Brief on Remand at 7-8, his objections immediately preceding the final "all prior objections" statement did not pertain to the validity of the statutory draw itself. 4 RR 73-92.

*Lovill*, 319 S.W.3d at 693.  Here, there is no reason why Appellant could not have formulated his Fourth Amendment challenge to the statutory blood draw during trial. As explained above, *McNeely* did not purport to address any implied consent mandatory draw statute; therefore, on its face, it had no applicability to the statutory draw of Appellant's blood.  Further, the Supreme Court adopted *McNeely*'s argument, of which Appellant was aware before trial.

It could be argued that the basis for Appellant's claim did not become available until *McNeely* was decided because, until then, Texas law appeared to endorse the *per se* exigency rule.[7]  So until *per se* exigency was not longer available, a defendant moving to suppress BAC results had no reason to challenge the legality of a draw under the statute.  Before *McNeely*, any challenge would have been deemed harmless with exigency as the sole legal basis.  However, because *McNeely*'s issue was clear-cut, Appellant should have anticipated the need to make the comprehensive argument he ultimately raised in his new trial motion.[8]  But even assuming it was not

---

[7]  *Aliff v. State*, 627 S.W.2d 166, 169-70 (Tex, Crim. App. 1982); *see also Pesina v. State*, 676 S.W.2d 122, 123-27 (Tex. Crim. App. 1984) (same).

[8]  *See Williams v. State*, 773 S.W.2d 525, 534-35 (Tex. Crim. App. 1988), *aff'd on reh'g* (*Batson* claim could not be raised for the first time on appeal even though *Batson* was decided after Appellant's trial; the legal basis was not so novel that it could not have been reasonably anticipated); *see also Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (facial challenge to a presumptively constitutional statute cannot be raised for the first time on appeal).

foreseeable, Appellant should have challenged each legal basis on its own terms.[9]

The court of appeals erred to hold that Appellant's blood draw challenge was preserved.

**2. Even assuming error was preserved, the draw was reasonable under the Fourth Amendment.**

The majority of the court of appeals reversed the trial court's denial of Appellant's motion for new trial.[10] *Leal*, 452 S.W.3d at 23. It stated, "We are persuaded by the reasoning of our sister courts of appeal and join them in concluding that the repeat-offender provision of the implied-consent statute . . . is not one of the recognized exceptions to the warrant requirement." *Id*. The court then concluded that the draw was not justified by exigent circumstances or valid consent. *Id*. at 23-32. Justice Frost dissented and, in doing so, adopted a similar rationale as Presiding Judge Keller in *State v. Villarreal*.[11] *Id*. at 32-40 (Frost, J., dissenting).

The warrantless blood draw, conducted under Texas Transportation Code

---

[9] *See, e.g., Buchanan v. State*, 207 S.W.3d 772, 776-79 (Tex. Crim. App. 2006) (an objection under the Fourth Amendment does not preserve a challenge to an arrest under Chapter 14 of the Code of Criminal Procedure); *Heidelberg v. State*, 144 S.W.3d 535, 539-43 (Tex. Crim. App. 2004) (an objection under the Fifth Amendment does not preserve a Texas constitutional challenge).

[10] The court of appeals incorporated its first opinion by reference on remand. *Leal*, 2015 Tex. App. LEXIS 6460, at *1.

[11] No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014, reh'g granted).

Section 724.012(b)(3)(B), was reasonable under Fourth Amendment jurisprudence. Review should be granted because the same issue is pending on rehearing in *Villarreal*, and in *Holidy v. State*, No. PD-0622-14 (granted Aug. 20, 2014; argued and submitted Jan. 14, 2015), *Reeder v. State*, No. PD-0601-14 (granted Aug. 20, 2014; argued and submitted Jan. 15, 2015), and *Douds v. State*, PD-0857-14 (granted Sept. 17, 2014; argued and submitted Mar. 18, 2015).[12]

3. **Even if foregoing issues are resolved in Appellant's favor, the federal and state exclusionary rules do not require suppression because police relied on binding law authorizing the search at the time it was conducted.**

In *Cole*, PD-0077-15 (granted Apr. 22, 2015), this Court also granted review to decide whether the remedy of suppression under the federal and state (TEX. CODE CRIM. PROC. art. 38.23) exclusionary rules, which are intended to deter police misconduct, is appropriate when the blood draw was conducted pursuant to a presumptively valid statute and case law interpreting it. Therefore, if the other issues are resolved in Appellant's favor, this Court should remand to the court of appeals to decide, in the first instance, whether suppression is warranted. Alternatively, for the reasons asserted in *Cole*, this Court should hold that the remedy of suppression is not warranted.

---

[12] *Weems v. State*, No. PD-0635-14 (granted Aug. 20, 2014; argued and submitted Nov. 17, 2014), and *Cole v. State*, PD-0077-15 (granted Apr. 22, 2015), do not implicate the repeat-offender provision.

11

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant review and reverse the decision of the court of appeals.

Respectfully submitted,

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No.13803300


/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney
Bar I.D. No. 24031632


P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512-463-1660 (Telephone)
512-463-5724 (Fax)

**CERTIFICATE OF COMPLIANCE**

The undersigned certifies that according to the WordPerfect word count tool this document contains 2,372 words, exclusive of the items excepted by TEX. R. APP. P. 9.4(i)(1).

/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

13

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the State's Petition for Discretionary

Review has been served on July 6, 2015, via certified electronic service provider to:

Hon. Allison Lindblade
600 59th Street, Suite 1001
P.O. Box 17254
Galveston, Texas 77551
allison.lindblade@co.galveston.tx.us

Hon. Mark W. Stevens
P.O. Box 8118
Galveston, Texas 77553
markwandstec@sbcglobal.net

/s/ STACEY M. GOLDSTEIN
Assistant State Prosecuting Attorney

# APPENDIX A


**JONATHAN ALBERT LEAL, Appellant v. THE STATE OF TEXAS, Appellee**

**NO. 14-13-00208-CR**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*2014 Tex. App. LEXIS 12286*

**November 13, 2014, Dissenting Opinion Filed**

**NOTICE:** PUBLISH -- *TEX. R. APP. P. 47.2(b)*.

**PRIOR HISTORY:** **[*1]** On Appeal from the 122nd District Court, Galveston County, Texas. Trial Court Cause No. 12CR0947.

**COUNSEL:** For Appellant: Mark W. Stevens, GALVESTON, TX.

For Appellee: Allison Lindblade, GALVESTON, TX.

**JUDGES:** Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., dissenting).

**OPINION BY:** Marc W. Brown

**OPINION**

**MAJORITY OPINION**

Appellant Jonathan Albert Leal was stopped for failing to yield the right of way. Appellant was arrested on suspicion of driving while intoxicated (DWI) and, over his explicit refusal, compelled by the arresting officer to submit to a warrantless intrusion into his veins. Appellant was convicted of felony DWI. *See Tex. Penal Code Ann. §§ 49.04, 49.09(b)* (West 2011 & Supp. 2014).

Appellant presents this court with two issues for review. The first issue is whether the traffic stop was supported by reasonable suspicion. The second issue is whether, under *Missouri v. McNeely, U.S. , 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)*, and based solely on the arresting officer's application of the repeat-offender provision of the implied-consent statute, *see Tex. Transp. Code Ann. § 724.012(b)(3)(B)* (West 2011), the State was justified in obtaining a blood sample from appellant's veins without a warrant.

With regard to appellant's first issue, we hold that the officer in this case had sufficient evidence to justify the warrantless temporary detention of appellant. With regard to appellant's second issue, we hold that the intrusion **[*2]** into appellant's veins was an unreasonable warrantless search in violation of the *Fourth Amendment*. We therefore reverse the trial court's judgment and remand to the trial court for a new trial consistent with this opinion.

**I. FACTS AND PROCEDURAL BACKGROUND**

Early in the morning of April 2, 2012, Jacob Hodges[1] was on patrol driving east in the right lane of West Main Street in League City, Galveston County, Texas. Hodges observed appellant approaching West Main Street from an apartment complex parking lot. Appellant was driving a white sport utility vehicle (SUV) approaching from the south at a high rate of speed. Immediately prior to turning onto West Main Street, appellant applied his brakes. This caused the SUV to visibly rock forward, compressing the front suspension. The front end of appellant's SUV entered West Main Street. Hodges had to slam on his brakes in order to avoid a collision.

> 1 At the time of the events at issue, Hodges was a police officer with the League City Police Department. At the time of trial, Hodges was a special agent with the Drug Enforcement Administration.

As a result of this near collision, Hodges initiated a traffic stop. During the course of the traffic stop, Hodges saw a **[*3]** bottle of rum behind the passenger's seat of appellant's SUV. Hodges noticed that appellant's eyes were red and watery. He also noticed the faint odor of alcohol on appellant's breath. In response to Hodges's questioning, appellant admitted to drinking three mixed drinks. Hodges administered a battery of standardized field sobriety tests. Based on appellant's performance on the sobriety tests and Hodges's personal observations, Hodges concluded that appellant was under the influence of alcohol. Hodges arrested appellant and transported him

to the League City jail.

At the jail, Hodges gave appellant the requisite statutory warning regarding the implied-consent statute and the consequences of refusing to submit to the taking of a blood or breath specimen. *See Tex. Transp. Code Ann. § 724.015* (West Supp. 2014). The warning was given orally and in writing. After receiving the statutory warning, appellant refused to submit to the taking of both a blood and a breath specimen.[2] Hodges then reviewed appellant's criminal history and discovered that appellant had two prior DWI convictions. Per the implied-consent statute, Hodges was required to obtain a specimen of appellant's blood. *See Tex. Transp. Code Ann. § 724.012(b)(3)(B)*. Hodges transported appellant to Clear **[*4]** Lake Regional Hospital where a nurse drew appellant's blood. According to Hodges's offense report, appellant was "very uncooperative" at the hospital; three people had to hold appellant down while the nurse took his blood. Hodges did not obtain a search warrant to draw appellant's blood.

> 2 While the written refusal in the record denotes only a refusal to submit a breath specimen, the testimony at trial in response to the State's questioning clearly demonstrates that appellant refused to submit samples of both breath and blood.

Appellant was indicted for operating a motor vehicle in a public place while intoxicated. *See Tex. Penal Code Ann. § 49.04(a)*. The indictment alleged two prior DWI convictions. Appellant stipulated to the validity of the two prior convictions. Appellant filed a motion to suppress challenging the legality of the traffic stop. After conducting a hearing, the trial court denied the motion to suppress.

The case was tried before a jury. Appellant's blood alcohol content, which was nearly three times the legal limit, was admitted into evidence. The jury found appellant guilty of the charged offense, and the trial court assessed punishment at eight years' confinement. The sentence was suspended and appellant **[*5]** was placed on community supervision.

The trial court's judgment was signed on February 15, 2013. Appellant filed his notice of appeal on the same day. On March 8, 2013, appellant filed a motion for new trial, asserting various grounds not pertinent to this appeal. On April 22, 2013, five days after the Supreme Court decided *McNeely*, appellant filed a supplemental motion for new trial in which he challenged the validity of the warrantless blood draw under *McNeely*. The trial court held a hearing on appellant's motion for new trial and ultimately denied the motion. On appeal, appellant challenges (1) the legality of the traffic stop and (2) the legality of the warrantless blood draw.

## II. STANDARD OF REVIEW

A trial court's denial of a motion to suppress and a trial court's denial of a motion for new trial are both reviewed under the abuse of discretion standard. *Okonkwo v. State, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)*; *Ex parte Moore, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013)*. A trial court abuses its discretion if no reasonable view of the record could support its ruling. *Okonkwo, 398 S.W.3d at 694*. We view the evidence in the light most favorable to the trial court's ruling. *Id.*; *Moore, 395 S.W.3d at 158*. At a hearing on the motion, the trial court is the sole judge of witness credibility and the weight given to witness testimony. *Okonkwo, 398 S.W.3d at 694*; *Moore, 395 S.W.3d at 158*. We must afford **[*6]** almost total deference to the trial court's findings of historical facts as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Okonkwo, 398 S.W.3d at 694*; *Abney v. State, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013)*. When the trial court does not make explicit findings of fact, we assume the trial court made implicit findings of fact supported by the record. *Okonkwo, 398 S.W.3d at 694*; *Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)*.

We review de novo (1) questions of law based on undisputed facts and (2) mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Jones v. State, 437 S.W.3d 536, 538 (Tex. App.--Texarkana 2014, pet. filed)*; *see Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999)*; *Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)*. Additionally, we review de novo the trial court's application of the law of search and seizure to the trial court's express or implied determination of historical facts. *Shepherd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008)*. Finally, we review de novo indisputable evidence contained in a video recording. *State v. Duran, 396 S.W.3d 563, 570-71 (Tex. Crim. App. 2013)*; *see Carmouche v. State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000)*.

## III. DISCUSSION

We begin our discussion with a general overview of the *Fourth Amendment*. We then analyze whether Hodges had reasonable suspicion that appellant committed the traffic violation of failing to yield the right of way. Finally, we analyze whether the warrantless intrusion into appellant's veins was justified under an exception to the Fourth Amendment's warrant requirement.

### A. The Fourth Amendment

The *Fourth Amendment* provides: "The right of the people to be secure in their persons, houses, papers, **[*7]** and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *U.S. Const. amend. IV*. The ultimate touchstone of the *Fourth Amendment* is reasonableness. *Riley v. California, U.S. , , 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014)*. Reasonableness generally requires the obtaining of a judicial warrant. *Id*. A warrantless search is reasonable only if it falls within a specific exception to the Fourth Amendment's warrant requirement. *Id*.

A defendant who alleges a search or seizure in violation of the *Fourth Amendment* must produce some evidence that rebuts the presumption of proper police conduct. *Amador v. State, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)*. To satisfy this burden, the defendant must establish that the search or seizure occurred without a warrant. *Id*. Once the defendant makes this showing, the State must prove that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. Here, the State seized and searched appellant without a warrant. Therefore, we must determine whether the warrantless temporary detention of appellant was reasonable and, if so, whether the warrantless intrusion into appellant's veins was reasonable.

### B. The traffic stop was reasonable.

The **[*8]** warrantless temporary detention of appellant was reasonable. A warrantless temporary detention, such as the traffic stop in this case, is lawful when the officer has reasonable suspicion to believe that an individual is violating the law. *Ford, 158 S.W.3d at 492*. Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a person has engaged, is engaging, or soon will be engaging in criminal activity. *Abney, 394 S.W.3d at 548*. This objective standard disregards the officer's subjective intent and looks solely at whether an objective basis for the detention exists. *Ford, 158 S.W.3d at 492*. A reasonable-suspicion determination is made by considering the totality of the circumstances at the time of the detention and must be based on commonsense judgments and inferences about human behavior. *Illinois v. Wardlow, 528 U.S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)*; *State v. Woodard, 341 S.W.3d 404, 412 (Tex. Crim. App. 2011)*.

In this case, Hodges testified that he stopped appellant for failing to yield the right of way. In order to satisfy its burden, the State was required to show that Hodges had a reasonable suspicion that appellant violated *section 545.155 of the Texas Transportation Code* by failing to yield the right of way. *See Abney, 394 S.W.3d at 548*.

*Section 545.155* provides that "[a]n operator about to enter or cross a highway from an alley, building, **[*9]** or private road or driveway shall yield the right-of-way to a vehicle approaching on the highway to be entered." *Tex. Transp. Code Ann. § 545.155* (West 2011). The undisputed evidence showed the following: o Hodges was driving eastbound in the right lane of West Main Street.

> o Appellant was driving through a parking lot at a high rate of speed.

> o Appellant's trajectory was perpendicular to that of Hodges.

> o Appellant was approaching West Main Street from the south.

> o Appellant's SUV stopped suddenly, causing its weight to visibly shift forward and its front suspension to compress.

> o The front end of appellant's SUV entered Hodges's lane.

> o Hodges had to slam on his brakes in order to avoid colliding with the SUV.

Based on the totality of these circumstances, we conclude that Hodges had reasonable suspicion that appellant committed the traffic violation of failing to yield the right of way. The record indicates that appellant did not yield the right of way to Hodges. Specifically, appellant allowed the front end of his SUV to enter the highway from the apartment complex's driveway when Hodges was approaching on the highway to be entered, namely West Main Street. *See id*.; *see, e.g., Thomas v. State, 336 S.W.3d 703, 708-09 (Tex. App.--Houston [1st Dist.] 2010, pet. ref'd)* (traffic stop for failing to yield right **[*10]** of way was justified when defendant's abrupt turn forced officer to apply brakes in order to avoid a collision).

The trial court did not err in denying appellant's motion to suppress. Appellant's first issue is overruled.

### C. The State's drawing of appellant's blood without a warrant was not reasonable because the State failed to establish a recognized exception to the Fourth Amendment's warrant requirement.

The State's drawing of appellant's blood without a warrant was not reasonable. The State failed to establish a recognized exception to the Fourth Amendment's warrant requirement.[3] A blood draw conducted at the direction of the police is a search subject to the reasonableness requirement of the *Fourth Amendment*. *Schmerber v. California, 384 U.S. 757, 767, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966)*. A warrantless search of the person is unreasonable unless it falls within a recognized exception to the warrant requirement. *McNeely, 133 S. Ct. at 1558*.

Voluntary consent to search and exigent circumstances are among the recognized exceptions. *McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003)*. We are persuaded by the reasoning of our sister courts of appeal and join them in concluding that the repeat-offender provision of the implied-consent statute, *see Tex. Transp. Code Ann. § 724.012(b)(3)(B)*, is not one of the recognized exceptions to the warrant requirement. *State v. Anderson, S.W.3d , , No. 09-13-00400-CR, 2014 Tex. App. LEXIS 11151, 2014 WL 5033262, at *15 (Tex. App.--Beaumont Oct. 8, 2014, no pet. h.)*; *Aviles v. State, S.W.3d , , No. 04-11-00877-CR, 2014 Tex. App. LEXIS 8508, 2014 WL 3843756, at *3 (Tex. App.--San Antonio Aug. 6, 2014, pet. filed)* **[*11]** ; *Forsyth v. State, 438 S.W.3d 216, 223 (Tex. App.--Eastland 2014, pet. filed)*; *Sutherland v. State, 436 S.W.3d 28, 41 (Tex. App.--Amarillo 2014, pet. filed)*; *Weems v. State, 434 S.W.3d 655, 665 (Tex. App.--San Antonio 2014, pet. granted)*; *Reeder v. State, 428 S.W.3d 924, 930 (Tex. App.--Texarkana 2014, pet. granted)*; *State v. Villarreal, S.W.3d , , No. 13-13-00253-CR, 2014 Tex. App. LEXIS 645, 2014 WL 1257150, at *11 (Tex. App.--Corpus Christi Jan. 23, 2014, pet. granted)*.

3    To the extent appellant asks us to decide the constitutionality of the implied-consent statute, we decline his invitation. "The constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised." *State ex rel. Lykos v. Fine, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011)* (quoting *Briggs v. State, 740 S.W.2d 803, 806-07 (Tex. Crim. App. 1987))*. Because *section 724.012(b)(3)(B)* is not a recognized exception to the Fourth Amendment's warrant requirement and because the State did not satisfy its burden to establish a recognized exception to the warrant requirement, we conclude that appellant's Fourth Amendment rights were violated. Therefore, it is not "absolutely necessary" for us to decide whether *section 724.012(b)(3)(B)* is unconstitutional, either facially or as applied to appellant.

Therefore, the State was required to prove that the warrantless intrusion into appellant's veins was justified by exigent circumstances or valid consent.[4]

4    The State has not argued that any other recognized exception to the warrant requirement applies to this case.

## 1. The drawing of appellant's blood without a warrant was not justified by exigent circumstances.

The State has not met its burden to establish the exigent circumstances exception **[*12]** to the warrant requirement. At the hearing on appellant's motion for new trial, the State acknowledged that, under *McNeely*, "it is not a per se exception to the general warrant requirement . . . that alcohol naturally dissipates in the blood stream." The State argues, however, that exigent circumstances did justify the warrantless blood draw in this case. The State avers that two hours elapsed from the time of the traffic stop to the time that appellant's blood was drawn. The State contends that the additional time needed to acquire a warrant threatened the destruction of the evidence of appellant's blood alcohol content. The State's position is untenable because it is not supported by evidence in the record.

The exigent circumstances exception applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the *Fourth Amendment*." *McNeely, 133 S. Ct. at 1558* (quoting *Kentucky v. King, U.S. , , 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011))*. The State has a compelling need to prevent the imminent destruction of evidence. *Id*. A law enforcement officer may conduct a search without a warrant if, under the circumstances, the delay necessary to obtain a warrant threatens the destruction of evidence. *Schmerber, 384 U.S. at 770*.

We must look to **[*13]** the totality of the circumstances as set forth in the record to determine whether the officer faced an exigency that justified acting without a warrant. *McNeely, 133 S. Ct. at 1559*. However, "in order to establish a plausible justification for an exigent circumstances exception to the warrant requirement, the State ha[s] the burden to show facts and circumstances beyond the passage of time and the resulting dissipation of alcohol in the bloodstream." *Douds v. State, 434 S.W.3d 842, 851 (Tex. App.--Houston [14th Dist.] 2014, pet. granted)* (en banc, op. on reh'g).

Here, the State has not shown or articulated any facts supporting the existence of an exigency beyond the passage of time and the resulting dissipation of alcohol in the bloodstream. The record shows that Hodges initiated the traffic stop just after 2:00 a.m. on April 2, 2012. Hodges arrested appellant at 2:46 a.m. The nurse drew appellant's blood at 4:20 a.m. Although Hodges testified that he was aware that he could obtain a blood-draw warrant, the record contains no evidence that he attempted to acquire such a warrant. Additionally, the record contains no evidence regarding what Hodges knew about the time needed to obtain a warrant. The State presented no evidence that further delay to obtain a warrant threatened the destruction of evidence. **[*14]** The only evidence of an exigency in this case is the two hours that elapsed from the time of the traffic stop to the time of the warrantless blood draw and the resulting dissipation of alcohol in appellant's blood stream.

Even though findings of historical fact supported by the record must be implied in favor of the trial court's

ruling, whether those facts meet the legal standard of exigent circumstances is a legal question we review de novo. *Douds, 434 S.W.3d at 855*. The findings that can be implied on this record do not support the conclusion that the delay necessary to obtain a warrant threatened the imminent destruction of the evidence of appellant's blood alcohol content.

Nor does the record support the dissent's position that appellant posed a risk similar to that of a suspected terrorist in a highly crowded airport. Here, appellant was in police custody and no longer a threat to anyone on the public roadways. This is in marked contrast to the would-be "air pirate" in the "zone of danger." The warrantless search in this case was for evidence of intoxication, not for weapons or implements of mass destruction that could still be used. Further, the dissent advances an argument that was not advanced by the **[*15]** State at trial or on appeal.[5]

5   We also note that courts deciding the validity of searches at airports after the 9/11 terrorist attacks have eschewed the notion that searches at airports are justified by consent. *See United States v. Aukai, 497 F.3d 955, 960-61 (9th Cir. 2007)* (en banc) (overruling prior cases that predicated the reasonableness of airport screening on ongoing consent or irrevocable implied consent; "[G]iven that consent is not required, it makes little sense to predicate the reasonableness of an administrative airport screening search on an irrevocable implied consent theory."); *see also Corbett v. Transp. Sec. Admin., 767 F.3d 1171, 1180 (11th Cir. 2014)* (describing airport search as administrative search rather than consent search); *George v. Rehiel, 738 F.3d 562, 575 (3d Cir. 2013)* (noting that airport screening was permissible under administrative search doctrine); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 653 F.3d 1, 10, 397 U.S. App. D.C. 313 (D.C. Cir. 2011)* (screening passengers at an airport is an administrative search). In fact, Texas courts have held that travelers who attempt to board a commercial aircraft or check their baggage lack standing to challenge the search because they do not have a reasonable expectation of privacy. *E.g., Kjolhede v. State, 333 S.W.3d 631, 633-34 (Tex. App.--Dallas 2009, pet. ref'd)*; *Turner v. State, 132 S.W.3d 504, 507-08 (Tex. App.--Houston [1st Dist.] 2004, pet. ref'd)*; *see also Florida v. J.L., 529 U.S. 266, 274, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000)* (reasonable expectation of privacy is diminished at airports). In a post-9/11 world, a person's submission to administrative airport screening has little to do with his or her consent, implied **[*16]** or otherwise. The dissent's effort to justify a per se rule of irrevocable consent by comparing a warrantless blood draw to an administrative search at an airport is unconvincing.

The State has not met its burden to establish that exigent circumstances justified the warrantless search into appellant's veins.

### 2. The drawing of appellant's blood without a warrant was not justified by valid consent.

The State next contends, "It is well settled that one of the established exceptions to a warrant requirement is a search pursuant to consent." The State equates statutory implied consent with the recognized consent exception to the Fourth Amendment's warrant requirement. The State's position is that a suspect with two prior DWI convictions has irrevocably consented to a mandatory warrantless blood draw. We disagree and conclude that, under the totality of the circumstances in the record, the State has not met its burden to establish that the warrantless search into appellant's veins was justified by valid consent.[6]

6   Like the First Court of Appeals in *Perez v. State*, we do not consider the constitutionality of the implied-consent statute. *See   S.W.3d   ,   , No. 01-12-01001-CR, 2014 Tex. App. LEXIS 2681, *16, 2014 WL 943126, at *7 (Tex. App.-- Houston [1st Dist.] Mar. 11, 2014, no pet.)*; *supra* note 3. Rather, we must decide an issue not addressed in *Perez*--whether **[*17]** such implied consent can be revoked.

### a. Consent under the Fourth Amendment

Under the *Fourth Amendment*, a warrantless search authorized by consent is wholly valid. *Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)*. Like searches justified by consent in other contexts, "consent to a blood test must be free and voluntary, and it must not be the result of physical *or* psychological pressures brought to bear by law enforcement." *Fienen v. State, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012)*. A person's consent is not voluntary if his will was overborne and his capacity for self-determination was critically impaired. *See Schneckloth, 412 U.S. at 225-26*; *Fienen, 390 S.W.3d at 333*.

Moreover, a person is free to limit the scope of or even revoke the consent that was given. *Florida v. Jimeno, 500 U.S. 248, 252, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991)*; *Valtierra v. State, 310 S.W.3d 442, 450 (Tex. Crim. App. 2010)*. If a person withdraws his or her consent before the search is completed, the police cannot continue searching based on the prior consent. *See, e.g., Mason v. Pulliam, 557 F.2d 426, 429 (5th Cir. 1977)* (citizen's withdrawal of consent and reinvocation of Fourth Amendment rights did not affect validity of IRS agent's actions prior to receiving notice of citizen's

withdrawal of consent). A suspect's ability to withdraw his or her consent is particularly important in cases like this one that involve a compelled intrusion into the human body. *See McNeely, 133 S. Ct. at 1565* ("We have never retreated . . . from our recognition that any compelled intrusion into the human body implicates significant, constitutionally **[*18]** protected privacy interests.").

It is the State's burden to show valid consent by clear and convincing evidence. *Fienen, 390 S.W.3d at 333*. The question of whether a person's consent was valid is one of fact to be determined from the totality of the circumstances and from the point of view of the objectively reasonable person. *Id*. "The standard for measuring the scope of a suspect's consent under the *Fourth Amendment* is that of 'objective' reasonableness-- what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno, 500 U.S. at 251*. One of the factors in determining the validity of a search based on consent is whether the suspect had the option to withdraw his or her consent. *Flores v. State, 172 S.W.3d 742, 749 (Tex. App.--Houston [14th Dist.] 2005, no pet.)*.

An officer's invocation of *section 724.012(b)(3)(B)* is not alone sufficient to establish the existence of valid consent justifying a warrantless blood draw. In *McNeely*, the Supreme Court rejected the state's argument that "whenever an officer has probable cause to believe an individual has been driving under the influence of alcohol, exigent circumstances will necessarily exist because [blood alcohol content] evidence is inherently evanescent." *McNeely, 133 S. Ct. at 1560*. The Court held that the dissipation of alcohol in the blood does not categorically support a finding **[*19]** of exigency and reiterated that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id. at 1563*. Here, the State's position is similar to that of the state in *McNeely*: whenever a person has been arrested for DWI and is a repeat offender, consent will necessarily exist because *section 724.012(b)(3)(B)* says it does. Like the *McNeely* Court, we reject the State's argument in favor of a categorical rule supporting a finding of irrevocable consent and instead reiterate that whether a warrantless blood test of a drunk-driving suspect is reasonable under the *Fourth Amendment* must be determined case by case based on the totality of the circumstances. Therefore, in this case, we must look at the facts and circumstances beyond application of *section 724.012(b)(3)(B)* to determine whether the search into appellant's veins was justified by valid consent.

### b. Implied Consent

Generally, implied-consent statutes require motorists, as a condition of operating a motor vehicle within the state, to consent to blood alcohol content testing if they are arrested or detained on suspicion of drunk driving. *McNeely, 133 S. Ct. at 1566*. Implied-consent statutes do not generally authorize searches; instead, they authorize **[*20]** the police to require motorists to choose between giving actual consent or withdrawing their "implied consent" and suffering the consequences. *State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867, 880 (Wis. Ct. App. 2014)*; *see McNeely, 133 S. Ct. at 1566*. A suspect who consents when presented with the choice has given actual consent, but a suspect who refuses to consent withdraws the statutorily "implied consent" and accepts the consequences of that choice. *Padley, 849 N.W.2d at 879*. In this respect, choosing to submit a breath or blood specimen rather than accepting the consequences of refusal is valid consent under the *Fourth Amendment*. *See McGautha v. California, 402 U.S. 183, 213, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971)* ("The criminal process . . . is replete with situations requiring 'the making of difficult judgments' as to which course to follow. Although a defendant may have a right . . . to follow whichever course he chooses, the Constitution does not . . . always forbid him to choose." (citations omitted)), *vacated on other grounds sub nom, Crampton v. Ohio, 408 U.S. 941, 92 S. Ct. 2873, 33 L. Ed. 2d 765 (1972)*; *Cantu v. State, 738 S.W.2d 249, 256 (Tex. Crim. App. 1987)* ("No constitutional violation is presented by the fact of a difficult decision for a defendant.").

The Texas implied-consent statutory scheme is similar to the general model. In Texas, "implied consent" means that a person arrested for DWI is deemed to have consented to the taking of one or more specimens of the person's breath or blood for analysis to determine **[*21]** alcohol concentration. *Tex. Transp. Code Ann. § 724.011 (West 2011)*. A specimen can only be taken if the person agrees to an officer's request for one, unless the provisions of *724.012(b)* apply. *Id. § 724.013 (West 2011)*. If a person refuses an officer's request to submit a specimen, the Department of Public Safety must immediately suspend the person's driver's license. *Id. § 724.035 (West 2011)*. At issue in this case is *section 724.012(b)(3)(B) of the Transportation Code*, the repeat-offender provision of the implied-consent statute. This provision requires an officer to take a specimen of a person's breath or blood if (1) the officer arrests the person for DWI, (2) the person refuses the officer's request to submit a specimen voluntarily, and (3) at the time of arrest, the officer possesses or receives reliable information from a credible source that the person has been previously convicted of DWI on two or more prior occasions. *Id. § 724.012(b)(3)(B)*.

### c. Analysis

Applying the Fourth Amendment standards, the applicable provisions of Texas's implied-consent statute,

and the appropriate standard of review, we conclude the State has not carried its burden to prove the existence of valid consent in this case. We acknowledge that the record supports a finding that the statutory requirements for a mandatory blood draw were **[\*22]** met. Appellant was arrested for DWI and was deemed by the implied-consent statute to have consented to submitting a specimen of his breath or blood. Because appellant had been convicted of DWI on two prior occasions and refused to submit a blood specimen voluntarily, Hodges was required by the mandatory blood draw provision of the implied-consent statute to obtain a specimen of appellant's breath or blood. Furthermore, appellant stipulated to the prior convictions at trial and does not contest that Hodges complied with the statute by requiring him to submit to the taking of a blood specimen.

The record supports a finding that appellant effectively withdrew his implied consent. Hodges testified that appellant refused consent to the blood draw. After discovering appellant's two prior DWI convictions, Hodges took appellant to the hospital for the mandatory blood draw. At this point, the record indicates that appellant physically resisted to the taking of his blood. Specifically, three people had to hold appellant down so the nurse could complete the blood-draw procedure. The explicit refusal coupled with the physical refusal to submit to the taking of a blood specimen effectively withdrew **[\*23]** appellant's prior implied consent. *See Jimeno, 500 U.S. at 251* (scope of consent is determined by what a reasonable person would have understood by the exchange between the officer and the suspect). Despite this withdrawal of consent and without obtaining a warrant, Hodges forced appellant to submit a blood specimen. Hodges's only justification for mandating the warrantless blood draw was his application of *section 724.012(b)(3)(B)*.

The totality of the circumstances in this case demonstrates that appellant withdrew his consent prior to the warrantless blood draw. In light of appellant's withdrawal of consent and because the State's only justification for conducting the warrantless nonconsensual blood draw was the repeat-offender provision of the implied-consent statute, we conclude the State has not met its burden to establish the existence of valid consent justifying the warrantless blood draw.

In reaching this conclusion, we recognize the apparent inconsistency between deemed consent under the implied-consent statute and a person's absolute right to refuse a test. *See Fienen, 390 S.W.3d at 332-33*. The Court of Criminal Appeals has explained this inconsistency: "[C]onsent being implied by law, a driver may not legally refuse. A driver, however, can physically refuse **[\*24]** to submit, and the implied-consent law, recognizing that practical reality, forbids the use of

physical force to compel submission." *Id. at 333* (quoting *Forte v. State, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988), overruled on other grounds, McCambridge v. State, 778 S.W.2d 70 (Tex. Crim. App. 1989)* (internal quotations omitted)). Although the repeat-offender provision of the implied-consent statute was not at issue in the *Fienen* court's analysis, *see 390 S.W.3d at 333*, the Supreme Court's recent abolition of categorical rules justifying exceptions to the warrant requirement persuades us that the use of physical force to compel submission, particularly in the face of physical resistance, is equally forbidden when the repeat-offender provision is at issue in the court's analysis, as it is in this case. *See McNeely, 133 S. Ct. at 1563; see also Aviles v. Texas, U.S. , , 134 S. Ct. 902, 902, 187 L. Ed. 2d 767 (2014)* (remanding, for consideration in light of *McNeely*, factually similar case involving repeat-offender provision of implied-consent law); *Tex. Dept. of Pub. Safety v. Watson, 945 S.W.2d 262, 266 (Tex. App.--Houston [1st Dist.] 1997, no pet.)* ("[A] person cannot be forced to breathe into a breathalyzer or have a needle with syringe forcibly poked into his arm."). Were it otherwise, we would be creating a per se exception to the warrant requirement for DWI repeat offenders. As the United States Supreme Court made clear in *McNeely*, this we cannot do.[7]

---

7 We acknowledge, as does the dissent, that "the permissibility of a **[\*25]** particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989)* (quoting *Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979))*. However, in this case, the balance of the State's interests in eradicating the drunken driving problem against the individual's constitutionally-protected interest in his or her bodily integrity undermines the dissent's position in favor of irrevocable consent based solely on the individual's status as a repeat offender.

The drunken driving problem is a national epidemic, and the State has an important interest in eradicating it. *See McNeely, 133 S. Ct. at 1565*. The State also has an interest in protecting law-abiding drivers from drunk drivers. But when balanced against the serious bodily intrusion necessitated by a warrantless mandatory blood draw, we conclude that the State's interests are sufficiently served by the provision in the Transportation Code mandating immediate suspension of a person's driver's license when the person refuses to submit to a blood draw, or, in the case of a person without a license, issuance of

an order denying the issuance of a license to that person. *See Tex. Transp. Code Ann. § 724.035(a)* (West 2011). Furthermore, in this case, appellant was in custody. **[*26]** He no longer posed a threat to public safety. And nothing in the record suggests that Hodges was prevented from obtaining a warrant.

We are not persuaded by the State's argument that, by citing favorably to implied-consent statutes throughout the country, the *McNeely* Court endorsed the use of implied-consent statutes as a means to justify the warrantless intrusion into a nonconsenting suspect's veins. The Court's statement that implied-consent laws "impose significant consequences when a motorist withdraws consent" presupposes that a motorist has the right to withdraw his or her consent. *McNeely, 133 S. Ct. at 1566*; *see Forsyth, 438 S.W.3d at 222* ("The Court's language does suggest . . . that an accused can withdraw his or her consent to submit a specimen for testing in direct contradiction to the State's argument that implied consent is irrevocable."); *see also Tex. Transp. Code Ann. § 724.035(a)* (West 2011) (providing for immediate suspension of license upon a person's refusal to submit to the taking of a specimen).[8] Furthermore, while "a majority of States either place significant restrictions on when the police officers may obtain a blood sample despite a suspect's refusal (often limiting testing to cases involving an accident resulting in death or serious bodily injury) **[*27]** or prohibit nonconsensual blood tests altogether," *McNeely, 133 S. Ct. at 1566*, Texas is the only state that purports to allow police officers to forcibly draw a DWI suspect's blood without a warrant based solely on the suspect's status as a repeat offender.[9] Lastly, the State's position fails to acknowledge that an officer who obtains a blood-draw warrant can still comply with the "shall require" language of *section 724.012(b)* while at the same time not running afoul of the *Fourth Amendment. See McGruder v. State*, S.W.3d , , No. 10-13-00109-CR, 2014 Tex. App. LEXIS 9022, *8, 2014 WL 3973089, at *3 (Tex. App.-- Waco Aug. 14, 2014, pet. filed) ("[S]ection *724.012(b)* does not require a blood or breath specimen be taken contrary to the *Fourth Amendment*; that is, without a warrant or without a recognized exception to the warrant requirement.")

8    Justice Sotomayor's discussion of implied-consent laws, which the State is using as the basis for its argument, was not joined by a majority of the Court. *See Forsyth, 438 S.W.3d at 222 n.3.*
9    We do note that Nevada's and Ohio's implied-consent schemes seem to allow officers to use "reasonable force" or "whatever reasonable means are necessary" to obtain samples from a person who refuses. Like the Texas statute, however, neither the Nevada nor the Ohio statute

precludes an officer from first obtaining a warrant. *See, e.g., Ala. Code §§ 32-5-192, 32-5-200* (Westlaw); *Alaska Stat. Ann. § 28.35.032* (Westlaw); *Ariz. Rev. Stat. Ann. §§ 28-1321, 28-1388* (Westlaw); *Ark. Code Ann. §§ 5-65-202, 5-65-205* (Westlaw); **[*28]** *Cal. Veh. Code §§ 13353, 23612* (Westlaw); *Colo. Rev. Stat. Ann. §§ 42-4-1301, 42-4-1301.1* (Westlaw); *Conn. Gen. Stat. Ann. §§ 14-227b, 14-227c* (Westlaw) (amended 2014); *Del. Code Ann. tit. 21, §§ 2740, 2741* (Westlaw); *Fla. Stat. Ann. § 316.1932* (Westlaw); *Ga. Code Ann. § 40-5-67.1* (Westlaw); *Haw. Rev. Stat. §§ 291E-15, 291E-21* (Westlaw); *Idaho Code Ann. § 18-8002* (Westlaw); *625 Ill. Comp. Stat. Ann. 5/11-501.1, 5/11-501.6* (Westlaw); *Ind. Code Ann. §§ 9-30-6-1, 9-30-6-3, 9-30-6-7* (Westlaw); *Iowa Code Ann. §§ 321J.6, 321J.9, 321J.10A* (Westlaw); *Kan. Stat. Ann. §§ 8-1001, 8-1002* (Westlaw); *Ky. Rev. Stat. Ann. §§ 189A.103, 189A.105, 189A.107* (Westlaw); *La. Rev. Stat. Ann. §§ 32:661, 32:666* (Westlaw); *Me. Rev. Stat. Ann. tit. 29-A, § 2521* (Westlaw); *Md. Code Transp. Ann. § 16-205.1* (Westlaw); *Mass. Gen. Laws ch. 90, § 24* (Westlaw); *Mich. Comp. Laws. Ann. §§ 257.625c, 257.625d* (Westlaw); *Minn. Stat. Ann. §§ 169A.51, 169A.52* (Westlaw); *Miss. Code Ann. §§ 63-11-5, 63-11-8, 63-11-21* (Westlaw); *Mo. Rev. Stat. §§ 577.033, 577.041* (Westlaw) (amended 2014); *Mont. Code Ann. § 61-8-402* (Westlaw); *Neb. Rev. Stat. Ann. §§ 60-6,197, 60-6,210, 60-498.01* (Westlaw); *Nev. Rev. Stat. Ann. §§ 484C.150, 484C.160* (Westlaw) (permitting use of "reasonable force" under certain circumstances when a person refuses); *N.H. Rev. Stat. Ann. § 265-A:14* (Westlaw); *N.J. Stat. Ann. §§ 39:4-50.2, 39:4-50.4a* (Westlaw); *N.M. Stat. Ann. § 66-8-111* (Westlaw); *N.Y. Veh. &amp; Traf. Laws § 1194* (Westlaw); *N.C. Gen. Stat. Ann. § 20-16.2* (Westlaw); *N.D. Cent. Code Ann. §§ 39:20-01, 39:20-01.1, 39:20-04* (Westlaw); *Ohio Rev. Code Ann. § 4511.191* (Westlaw) (allowing officer to employ "whatever reasonable means are necessary" to ensure submission; providing officers with criminal and civil immunity); *Okla. Stat. Ann. tit. 47, § 753* (Westlaw); *Or. Rev. Stat. Ann. §§ 813.095, 813.100* (Westlaw); *75 Pa. Cons. Stat. Ann. § 1547* (Westlaw); *R.I. Gen. Laws Ann. § 31-27-2.1* (Westlaw) (amended 2014); *S.C. Code Ann. §§ 56-5-2950, 56-5-2951* (Westlaw) (amended by 2014 S.C. Act 158); *S.D. Codified Laws §§ 32-23-1, 32-23-10* (Westlaw) (officer can "require" suspect arrested for DWI to submit); *Tenn. Code Ann. § 55-10-406* (Westlaw); *Utah Code Ann. §§ 41-6a-520, 41-6a-524* (Westlaw); *Vt. Stat. Ann. tit. 23, § 1202* (Westlaw); *Va. Code Ann. §§ 18.2-268.2, 18.2-268.3* (Westlaw) (refusal is a separate

crime); *Wash. Rev. Code Ann. § 46.20.308* (Westlaw); *W. Va. Code Ann. § 17C-5-7* (Westlaw); *Wis. Stat. Ann. § 343.305* (Westlaw); *Wyo. Stat. Ann. § 31-6-102* (Westlaw).

Nor are we persuaded by the State's reliance on dictum in *Beeman v. State* describing the implied-consent statute as "another method of conducting a constitutionally valid [warrantless] **[*29]** search." *86 S.W.3d 613, 615 (Tex. Crim. App. 2002)*. First, a statute cannot authorize what the Constitution forbids. *State v. Mosely, 348 S.W.3d 435, 442 (Tex. App.--Austin 2011, pet. ref'd)*.

Second, the San Antonio Court of Appeals relied on the *Beeman* dictum in *Aviles v. State, 385 S.W.3d 110 (Tex. App.--San Antonio 2012), vacated, 134 S. Ct. 902, 187 L. Ed. 2d 767 (2014)*, a factually similar case involving *section 724.012(b)(3)(B)*. There, the San Antonio court held that *section 724.012(b)(3)(B)* permits an officer to take a blood specimen from a DWI suspect without a warrant if the officer has information that the suspect has been previously convicted of DWI on at least two prior occasions. *Aviles, 385 S.W.3d at 116*. The Supreme Court vacated the San Antonio court's judgment and remanded the case for consideration in light of *McNeely. Aviles, 134 S. Ct. at 902*. The San Antonio court recently issued a new opinion in *Aviles*, rejecting its earlier reliance on the *Beeman* dictum and holding that *section 724.012(b)(3)(B)* is not a permissible exception to the warrant requirement. *2014 Tex. App. LEXIS 8508, 2014 WL 3843756, at *3*.[10] The Supreme Court's remand of *Aviles* suggests that *section 724.012(b)(3)(B)* cannot serve as the sole basis for mandating a warrantless blood draw when the totality of the circumstances surrounding the blood draw indicate a lack of valid consent.

> 10    *See also Forsyth, 438 S.W.3d at 221* (declining to rely on *Beeman* for proposition that implied consent is a valid exception to the warrant requirement); *Sutherland, 436 S.W.3d at 35-36* (discussing *Beeman* in the context of the remand of Aviles); *Weems, 434 S.W.3d at 660-61* (same); *Reeder, 428 S.W.3d at 928* (noting the Supreme Court's remand **[*30]** of *Aviles* casts "grave doubt" on the reasoning of *Beeman*); *Villarreal, S.W.3d at , 2014 Tex. App. LEXIS 645 at *20 2014 WL 1257150, at *11* (noting the *Beeman* court recognized that implied-consent laws do not give police officers anything more than what the Constitution already gives them). *But see Perez, 2014 Tex. App. LEXIS 2681, 2014 WL 943126, at *6-*7* (relying solely on *Beeman* dictum in a *section 724.012(b)(3)(B)* case to justify warrantless blood draw; providing no discussion of or citation to cases rejecting *Beeman* dictum); *Kay v. State, No. 01-13-00595-*

*CR, 2014 Tex. App. LEXIS 8054, 2014 WL 3697917, at *2 (Tex. App.--Houston [1st Dist.] July 24, 2014, no pet.)* (mem. op., not designated for publication) (same).

Additionally, *Beeman* is distinguishable. The officer in *Beeman* arrested the defendant for DWI and obtained a warrant to draw his blood. *86 S.W.3d at 614*. The defendant, who refused a breath test and objected to the blood draw, argued that the search was invalid because it violated the implied-consent statute--i.e., he revoked his consent. *Id. at 615*. The court held that "once a valid search warrant is obtained[,] . . . consent, implied or explicit, becomes moot." *Id. at 616*. Here, in contrast, Hodges never obtained a warrant and relied solely on the repeat-offender provision of the implied-consent statute to justify the forced blood draw. The totality of the circumstances surrounding appellant's consent, and his effective withdrawal of consent, is therefore not moot; to the contrary, it is of utmost **[*31]** importance in assessing the reasonableness of the search under the *Fourth Amendment*. For these reasons, we conclude that the State's reliance on *Beeman* for the proposition that *section 724.012(b)(3)(B)* permits the warrantless blood draw from a DWI suspect who has effectively withdrawn his implied consent is not persuasive.

Finally, the dissent suggests that appellant is similar to the defendant in *United States v. Knights, 534 U.S. 112, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001)*. The facts of this case, however, are distinguishable. In *Knights*, the defendant was on probation and agreed in writing to submit his person, property, place of residence, vehicle, and personal effects to search at any time, with or without a search warrant, warrant of arrest, or reasonable cause by any probation officer or law enforcement officer. *534 U.S. at 114*. Here, in contrast, the record contains no evidence to suggest that appellant was on probation when the offense occurred, or that he agreed in writing to submit to a warrantless search by probation officials or anyone else. Appellant was not searched as a condition of probation. Furthermore, searches such as the one in *Knights* are viewed in a different context because probation (and parole) is considered an extension of incarceration. *See id. at 119* ("Inherent in the very nature of probation **[*32]** is that probationers do not enjoy the absolute liberty to which every citizen is entitled." (internal quotations omitted)). Nothing in the record before us suggests that appellant was subject to some sort of "conditional liberty" as contemplated in *Knights*. Nor did the State assert at trial or on appeal that the search of appellant was based on such an exception.

In sum, appellant withdrew his implied consent when he refused to submit to the blood draw, and the State, in spite of appellant's physical resistance, forcibly poked a syringe into his arm and drew his blood anyway. Given the absence of a warrant, the absence of exigent

circumstances, and the absence of valid consent, we conclude the State did not establish that the nonconsensual warrantless intrusion into appellant's veins was reasonable under the *Fourth Amendment* or that a recognized exception to the Fourth Amendment's warrant requirement applied to this case. The trial court erred when it overruled appellant's motion for new trial.

### 3. The trial court's error in overruling appellant's motion for new trial was harmful.

Having concluded that the trial court erred, we next determine whether the trial court's error resulted in harm. In the face of constitutional **[*33]** error, we must reverse the judgment of conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Tex. R. App. P. 44.2(a)*; *Holmes v. State, 323 S.W.3d 163, 173-74 (Tex. Crim. App. 2010)* (op. on reh'g). In this case, the blood evidence seized from appellant was inculpatory and was used against appellant at trial. Specifically, evidence of appellant's blood alcohol content, which exceeded the legal limit by nearly a factor of three, was presented at trial. We cannot determine beyond a reasonable doubt that the State's use of the evidence of appellant's blood alcohol content did not contribute to appellant's conviction. *See Holmes, 323 S.W.3d at 174*. This indicates that the trial court's erroneous ruling was indeed a contributing factor in appellant's conviction and punishment. Therefore, the error was harmful.

Appellant's second issue is sustained.

## IV. CONCLUSION

Because the traffic stop in this case was reasonable, the trial court did not err when it denied appellant's motion to suppress. We overrule appellant's first issue. With regard to appellant's second issue, the State did not carry its burden to prove a recognized exception to the Fourth Amendment's warrant requirement. We sustain appellant's second issue and hold that the drawing of appellant's **[*34]** blood without a search warrant violated the *Fourth Amendment*. The trial court erred in denying appellant's motion for new trial. Because the evidence of appellant's blood alcohol content was inculpatory, we conclude it contributed to his guilt. *See id*. We therefore reverse the trial court's judgment and remand to the trial court for a new trial consistent with this opinion.

/s/ Marc W. Brown

Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., dissenting).
Publish -- *TEX. R. APP. P. 47.2(b)*.

**DISSENT BY:** Kem Thompson Frost

## DISSENT

## DISSENTING OPINION

The *Fourth Amendment to the United States Constitution* provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no warrants shall issue" unless the warrants meet certain requirements.[1] The Supreme Court of the United States has determined that, where a search is undertaken by law-enforcement officials to discover evidence of criminal wrongdoing, the *Fourth Amendment* generally requires the obtaining of a judicial warrant.[2] In the absence of a warrant, a search is reasonable under the *Fourth Amendment* only if it falls within a specific exception to this general warrant requirement.[3] One such exception is a search conducted pursuant to consent.[4]

> 1  *U.S. Const. amend. IV*; **[*35]**  *see also Tex. Const. art. I, § 9.*
> 2  *See Riley v. California,   U.S.  ,  , 134 S. Ct. 2473, 2482, 189 L.Ed.2d 430 (2014).*
> 3  *See id.*
> 4  *See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973).*

Today, this court faces as issues of first impression (1) whether *section 724.012(b)(3)(B)* of Texas's implied-consent statute falls within the consent exception to the warrant requirement and (2) whether consent under this particular provision is revocable. More specifically, we must decide whether this subsection of the statute provides a basis for concluding that appellant Jonathan Albert Leal irrevocably consented to the blood draw. If the trial court's ruling is supported by the record, we are to affirm that ruling if there is any valid theory of law that supports the ruling, even if the theory was not presented to the trial court and even if the theory is not advanced by the prevailing party on appeal.[5]

> 5  *Alford v. State, 400 S.W.3d 924, 928 n.2 (Tex. Crim. App. 2013)*; *Miller v. State, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).*

The ultimate touchstone of the *Fourth Amendment* is reasonableness.[6] We are to examine the totality of the circumstances to determine whether a search is reasonable.[7] The Fourth Amendment's protection against unreasonable searches and seizures requires courts reviewing searches to balance opposing interests and determine the reasonableness of a particular search in a particular context.[8] Whether a search is reasonable depends upon the degree to which it intrudes upon an individual's privacy and the degree to which **[*36]** it is needed to promote legitimate government interests.[9] Thus, context is crucial in assessing reasonableness.

6   *Riley,   U.S. at   , 134 S. Ct. at 2482.*
7   *Samson v. California, 547 U.S. 843, 848, 126 S.Ct. 2193, 2197, 165 L.Ed.2d 250 (2006).*
8   *See Scott v. Harris, 550 U.S. 372, 383, 127 S.Ct. 1769, 1778, 167 L.Ed.2d 686 (2007).*
9   *Samson, 547 U.S. at 848, 126 S.Ct. at 2197.*

**Validity of Implied Consent to Blood Draw by DWI Repeat Offenders**

In assessing the validity of the implied consent in today's case, the issue is whether police reasonably could assume that appellant, who twice before had been convicted of driving while intoxicated (DWI), irrevocably consented to a blood draw[10] through his conduct in operating a motor vehicle on Texas's public roadways. *Texas Transportation Code sections 724.012(b)(3)(B)* and *724.011* effectively advise individuals with two or more prior DWI convictions ("DWI Repeat Offenders") that police will interpret a DWI Repeat Offender's conduct in operating a motor vehicle as giving consent to a blood draw in the event of a new DWI arrest.[11]

10    *Transportation Code Section 724.012* provides that a police officer "shall require the taking of a specimen of breath or blood." *Tex. Transp. Code Ann. § 724.012(b)* (West 2014). Under this statute, an officer may take a breath sample rather than a blood sample.
11    *Tex. Transp. Code Ann. §§ 724.011, 724.012(b)(3)(B)* (West 2014).

Implied consent, if otherwise valid, is sufficient to support the consent exception.[12] The majority, however, rejects implied consent and suggests that despite the statute's plain statement of the consequences flowing from a DWI arrest for **[*37]** a DWI Repeat Offender, a police officer cannot interpret a DWI Repeat Offender's conduct in operating a motor vehicle as consent to a blood draw because such an interpretation would establish a categorical rule and categorical rules are prohibited by the Supreme Court's opinion in *Missouri v. McNeely*.[13] The majority says that "whenever a person has been arrested for DWI and is a repeat offender, consent will necessarily exist because *section 724.012(b)(3)(B)* says it does."[14] This oversimplification of how this provision of the implied-consent statute operates skews the focus away from the important contextual considerations that should drive the court's analysis. Analyzing consent in context leads to the opposite conclusion.

12    *McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).*
13    *See* maj. op. at    ; *Missouri v. McNeely,  U.S.   ,    , 133 S. Ct. 1552, 1561, 185 L. Ed. 2d*

*696 (2013).*
14   Maj. op. at   .

Consent exists because individuals are deemed to know the law.[15] This is especially true for recidivists. By nature, they are reoffenders who, after being convicted, break the same law again. In crafting many of our state's statutory schemes, Texas lawmakers recognize the distinct risk posed by recidivists and identify specific consequences for reoffenders.[16] *Section 724.012(b)(3)(B)* provides that, for a particular class of DWI reoffenders, taking the action of driving on public **[*38]** roadways is consent to a blood draw.[17] Accordingly, police reasonably can assume that a DWI Repeat Offender who uses public roadways and is charged with knowledge of laws governing such use, consents to a blood draw in the event a police officer has reasonable grounds to believe that the DWI Repeat Offender is driving while intoxicated. Just as it is reasonable for police officers to assume that the category of individuals who speak the words, "Yes, I give you consent to search," in fact, have consented, a police officer reasonably can interpret the conduct of a DWI Repeat Offender in driving a vehicle on the public street as giving consent for the blood draw.[18]

15    *See Tex. Penal Code Ann. § 8.03* (West 2014); *Johnson v. State, 423 S.W.3d 385, 388 n.2 (Tex. Crim. App. 2014).*
16    *See, e.g. Tex. Penal Code § 12.42* (West 2014).
17    *Tex. Transp. Code Ann. § 724.012(b)(3)(B).* This opinion does not address whether an individual who drives on a public street has consented to a search based of any other section of *Texas Transportation Code Section 724.012*.
18   As the majority acknowledges, the reality that a driver must make a tough choice, between driving and knowing that his conduct in driving will be interpreted as consent, does not render the consent invalid.

**Irrevocability of Consent**

The majority suggests that, in any event, appellant effectively revoked any consent for the blood draw. But, under Texas's **[*39]** statutory scheme, consent by a DWI Repeat Offender cannot be revoked.[19] The majority states that there is a categorical rule that an individual's consent to a search is limited in scope and that such consent is always subject to the right of withdrawal.[20] The Supreme Court has found otherwise. Revocation is not always an option. In various contexts, the "right of withdrawal" has been found unreasonable and unavailable.[21] Drawing from this body of jurisprudence and the intent and purpose of the Texas Legislature in creating this particular provision of the implied-consent statute, it makes more sense to conclude that revocation of implied consent is not an option for a DWI Repeat Offender.

19 See Tex. Transp. Code Ann. § 724.011, et seq.

20 See Mason v. Pulliam, 557 F.2d 426, 428 (5th Cir. 1977).

21 See U.S. v. Spriggs, 30 F.3d 132, 132 (4th Cir. 1994), cert. denied, 513 U.S. 1159, 115 S. Ct. 1120, 130 L. Ed. 2d 1083 (1995) (holding that visitor to prison could not revoke consent to search); U.S. v. Knights, 534 U.S. 112, 116, 122 S.Ct. 587, 590, 151 L.Ed.2d 497 (2001) (holding that probationers may not revoke consent to searches); U.S. v. Herzbrun, 723 F.2d 773, 775 (11th Cir. 1984) (holding that airline passengers may not revoke consent to search); U.S. v. Haynie, 637 F.2d 227, 230 (4th Cir. 1980) (same).

Consent affects the balance of interests between an individual and the government.[22] The balance can tip for or against revocation of consent, depending on the circumstances. For example, in the context of searches of probationers' homes, the Supreme Court, in *United* **[*40]** *States v. Knights*, relied on a probationer's signed form[23] to enforce the probationer's agreement to "submit to a search 'by any probation officer or law enforcement officer.'"[24] In concluding that the probationer's motion to suppress evidence from such a search should be denied, the Supreme Court reasoned that:

> The judge who sentenced Knights to probation determined that it was necessary to condition the probation on Knights' acceptance of the search provision. It was reasonable to conclude that the search condition would further the two primary goals of probation--rehabilitation and protecting society from future criminal violations. The probation order clearly expressed the search condition and Knights was unambiguously informed of it. The probation condition thus significantly diminished Knights' reasonable expectation of privacy. *534 U.S. at 119-20, 122 S.Ct. at 591-92.*

In weighing the government's interest in *Knights*, the high court, recognizing the context, noted that the probationer is more likely than the ordinary citizen to violate the law.[25] In light of this reality, the Supreme Court essentially determined that the State, to further its goal of protecting the public from past offenders, may condition the granting of **[*41]** a privilege upon the past offender's irrevocable consent to a search.[26] And, in the context of parolees, the Supreme Court found it significant that "in most cases, the State is willing to

extend parole only because it is able to condition it upon compliance with certain requirements.[27]"[28] Significantly, the high court reasoned that the State is not required to "ignore the reality of recidivism or suppress its interests in 'protecting potential victims of criminal enterprise' for fear of running afoul of the *Fourth Amendment*."[29]

22 See U.S. v. Knights, 534 U.S. at 116, 122 S.Ct. at 590.

23 The Supreme Court of the United States also has upheld searches of parolees based on statutory scheme as opposed to the parolee's signature on a form. See Samson v. California, 547 U.S. 843, 857, 126 S. Ct. 2193, 165 L. Ed. 2d 250 (2006).

24 Knights, 534 U.S. at 116, 122 S.Ct. at 590. The Court of Criminal Appeals of Texas has held that consent given by a probationer in accepting a probation condition is invalid under the Fourth Amendment and Article 1, Section 9 of the Texas Constitution. See Tamez v. State, 534 S.W.2d 686, 690-92 (Tex. Crim. App. 1976). U.S. v. Knights overruled Tamez with respect to the Fourth Amendment. See Townes v. State, 293 S.W.3d 227, 230-31 (Tex. App.--San Antonio 2009, no pet.). The Court of Criminal Appeals has held that Article 1, Section 9 of the Texas Constitution does not provide any greater right than the Fourth Amendment. See Hulit v. State, 982 S.W.2d 431, 437 (Tex. Crim. App. 1998). Even if the Texas Constitution did provide a greater right, the DWI search is based upon probable cause unlike the search probation condition determined to be too broad in Tamez. See Tamez, 534 S.W.2d at 692.

25 See id **[*42]** .

26 See id.

27 Similarly, for DWI Repeat Offenders the State of Texas has conditioned the privilege of driving upon implied consent to a blood draw. See Tex. Transp. Code Ann. §§ 724.011, 724.012(b)(3)(B).

28 See Samson, 547 U.S. at 850, 126 S.Ct. at 2198.

29 Id. at 849, 2198.

The Supreme Court's consideration of the "reality of recidivism" as key to the government's interest in protecting potential victims of crime has obvious application in the context of the DWI Repeat Offender, who poses a grave risk to public safety on roadways. Courts have observed that "an automobile in the hands of a drunk driver can be just as lethal a weapon as a gun"[30] and have "repeatedly lamented" the "increasing slaughter on our highways. . . now reach[ing] the astounding figures only heard of on the battlefield."[31] The high court's determination that the State is not required to suppress its interests in protecting potential victims of crime out of concern of stepping on the *Fourth Amendment* is

particularly relevant and compelling in the repeat-offender drunk-driving context.

> 30 *U.S. v. Tristan-Madrigal, 601 F.3d 629, 633-34 (6th Cir. 2010)* (internal quotations omitted).
> 31 *Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 451, 110 S. Ct. 2481, 2486, 110 L. Ed. 2d 412 (1990)* (internal quotations omitted).

Similar public-safety concerns have prompted courts to fashion special exceptions to the warrant requirement and to disallow revocation of implied consent given in exchange for a privilege. For example, in considering consent **[*43]** given in exchange for the benefit of air travel, courts have disallowed revocation, holding that officials are not required to ignore the attendant dangers of air piracy. The Eleventh Circuit concluded, even before the increased concern following the infamous terrorist attacks on America on September 11, 2001, that to keep the airways safe from "the intense danger of air piracy," airports are "critical zones" in which special *Fourth Amendment* considerations apply.[32] Courts have determined that an individual who begins the process of airport screening may not avoid the search by asking to leave.[33] Noting that air travel is a privilege, the Fourth Circuit has reasoned that it may be conditioned upon irrevocable consent to a search.[34] In balancing the government's interest in disallowing revocation of consent, courts have placed special focus on the statutory scheme and purpose, noting that allowing an individual to leave after the individual has reached the point of embarkation "greatly damages the prophylactic purpose of the search procedure."[35] Importantly, "the very fact that a safe exit is available ... would, by diminishing the risks, encourage attempts."[36] Courts have recognized the necessity for restricting **[*44]** the right to revoke consent after this crucial point, noting that the problem with allowing a "safe exit" is that "established search procedures are perhaps more valuable by what they discourage than what they discover."[37]

> 32 *See Herzbrun, 723 F.2d at 775*.
> 33 *See id*.
> 34 *Haynie, 637 F.2d at 230*.
> 35 *See United States v. Skipwith, 482 F.2d 1272, 1277, 1281 (5th Cir. 1973)* (Aldrich, dissenting) (the majority agreed with this part of the dissenting opinion, holding Skipwith's "right-to-leave" argument lacked merit).
> 36 *Id*.
> 37 *See id*.

The majority notes that since the events of September 11, federal circuit courts have overruled prior cases that predicated the reasonableness of airport screening on irrevocable implied consent and determined that the *Fourth Amendment* requires even less protection of the individual in dangerous contexts.[38] Indeed, the majority cites cases holding that today airport searches are administrative and no consent is needed at all.[39] The majority argues that it is unpersuasive to attempt to justify a rule of irrevocable consent by comparing a warrantless blood draw to an administrative search. But, the danger factor that has driven courts to conclude administrative searches are reasonable in the context of perilous and high-risk circumstances only further supports the position that preventing a DWI Repeat Offender from revoking **[*45]** consent to a blood draw is also reasonable under the *Fourth Amendment*. Though administrative searches have no requirement of consent or individualized suspicion, *section 724.012(b)(3)(B)* requires an officer to have made a valid arrest of a DWI Repeat Offender before the officer obtains a blood draw. If administrative searches at airports are reasonable under the *Fourth Amendment*, then it is also reasonable to enforce this particular provision of the implied-consent statute in the narrow context of DWI Repeat Offenders exercising the privilege of driving on public roadways.

> 38 *See* maj. op. at   .
> 39 *See George v. Rehiel, 738 F.3d 562, 575 (3d Cir. 2013)*; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 653 F.3d 1, 10, 397 U.S. App. D.C. 313 (D.C. Cir. 2011)*; *United States v. Aukai, 497 F.3d 955, 960-61 (9th Cir. 2007)* (en banc).

Today's case is similar to the special cases involving criminal recidivism and zones of danger. Yet, it presents a unique circumstance requiring review of a search in the multi-faceted context of (1) a recidivist (2) who has engaged in dangerous conduct on the roadways, (3) consented to a narrow search (blood draw or breath specimen in the event of another DWI arrest) in exchange for the privilege of being allowed to drive in spite of that past dangerous conduct, (4) accepted the benefits of the conditioned privilege by driving on a public roadway, and (5) is arrested for engaging in the same highly dangerous conduct again. Confronted **[*46]** with this extraordinary public endangerment and the critical need to deter the fatal activity, the Texas Legislature enacted a series of laws,[40] specifically focusing its efforts on the severe threat posed by recidivists who fail to observe the prohibition against drunk driving even after being convicted of the offense at least twice before. Because this class of offenders represents a particular, known, and heightened threat to public safety, the Texas Legislature sought to deter DWI Repeat Offenders from getting behind the wheel and again endangering the public by driving in an impaired state. The legislative solution to the recidivist threat was to provide a framework that conditioned the driving privilege on consent to police officers obtaining blood or breath samples from DWI Repeat Offenders who are suspected of driving while intoxicated and to obtain the samples in the absence of a search warrant.[41] This provision of the statute is narrowly tailored, specific to

the search, and is limited in scope, effectively serving the purpose and meeting the requirements of a warrant.[42]

40    See Tex. Transp. Code Section 724.001, et seq. (West 2014).
41    See Beeman v. State, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).
42    See New York v. Burger, 482 U.S. 691, 703, 107 S. Ct. 2636, 2644, 96 L. Ed. 2d 601 (1987).

Section 724.012(b)(3)(B) of Texas's implied-consent law creates a compact that is akin to the compact [*47] enforced against probationers and parolees. The majority argues that, unlike probationers and parolees, DWI Repeat Offenders do not have conditional liberty interests. But, driving is a privilege, not a right.[43] Just as it is reasonable to enforce the agreements of parolees and probationers that diminish their liberty interests, it is reasonable to enforce agreements of DWI Repeat Offenders to consent to blood draws on condition of exercising driving privileges.

43    See Tex. Transp. Code Ann. § 724.035 (West 2014).

In exchange for the privilege of driving on public roads in Texas, the DWI Repeat Offender irrevocably consents to have blood drawn in the event that the DWI Repeat Offender is arrested yet again for driving while intoxicated.[44] Under this compact, the DWI Repeat Offender faces a difficult choice:[45] forego driving a motor vehicle on Texas roadways or consent to a blood draw in the event of another DWI arrest.[46] The latter choice does not include the option of revocation.[47] It is significant that the Texas Legislature did not outright deny the driving privilege to DWI Repeat Offenders, but instead gave these individuals the option of enjoying the privilege subject to the condition. Appellant's acceptance of the benefits [*48] of this conditioned privilege supports the irrevocability of his consent. Once appellant, a DWI Repeat Offender, elected the condition attached to the driving privilege by turning the key to start the vehicle's ignition, it was too late to revoke consent. At that point, as a DWI Repeat Offender, appellant had accepted the risk of a blood draw should he be arrested for driving while intoxicated.

44    See Tex. Transp. Code Ann. §§ 724.011; 724.012.
45    See McGautha v. California, 402 U.S. 183, 213, 91 S. Ct. 1454, 28 L. Ed. 2d 711 (1971).
46    Tex. Transp. Code § 724.011.
47    See generally, id. at § 724.011, et seq.

If a police officer suspects a DWI Repeat Offender of driving while intoxicated, the officer shall arrange for a statutory blood draw or the collection of a breath specimen. Were the DWI Repeat Offender entitled to revoke consent at that point, then the prophylactic purpose of the search procedure prescribed by the Texas statute would be frustrated.[48] Likewise, the deterrent effect of the statutory scheme would be thwarted as the DWI Repeat Offender would be able to revoke consent for the blood draw even after accepting the conditioned privilege of driving. The State of Texas is not required to ignore either the grave public danger of drunk driving or the reality of recidivism in DWI Repeat Offenders.

48    See Skipwith, 482 F.2d at 1281.

The majority concludes that the DWI Repeat [*49] Offender can revoke consent after being arrested for another DWI offense. According to the majority, reasonableness requires the State to allow the DWI Repeat Offender's revocation. Rather than examine the search in the context of the State's keen interest in curbing fatal recidivist activity and regulating that activity within a recognized danger zone for the purpose of protecting the public from threat of death or injury, the majority relies on cases in home-search contexts that have little application to the circumstances presented by today's case.[49]

49    See maj. op. at  .

In the context of drunk driving and DWI Repeat Offenders, reasonableness does not dictate that revocation of consent is always an option, as the majority concludes. It is not an option in the context of air piracy, where the State has an interest in thwarting and deterring activity that endangers the public. *Is drunk driving by DWI Repeat Offenders any less risky or dangerous to human life? Does a DWI Repeat Offender on a public roadway create any less of a "zone of danger" than one suspected of air piracy?*

Just as the need to protect the public in the airways makes it reasonable to prevent individuals from revoking [*50] their consent to a search before boarding a plane, the need to protect the public on roadways makes it reasonable to prevent DWI Repeat Offenders from revoking consent to a search after being arrested for a new DWI offense. Allowing a DWI Repeat Offender who embarks on a public roadway to revoke consent to a search once arrested for DWI provides the "safe exit" the Supreme Court condemned in the air piracy context.[50] Just as allowing revocation in the airways context would frustrate the federal scheme, the "safe exit" the majority creates today undermines Texas's ability to prosecute DWI Repeat Offenders who choose to drive drunk again.

50    See Skipwith, 482 F.2d at 1281.

The Texas Legislature has recognized the serious and pervasive threat posed by recidivists and has taken focused action to address it in our state by imposing conditions on DWI Repeat Offenders who, despite their

prior DWI convictions, are granted and accept the privilege of driving on Texas roadways. Both this deterrence interest and the reality of recidivism among DWI Repeat Offenders are important factors in determining whether a search is reasonable under the *Fourth Amendment*.[51]

> 51    *See Knights, 534 U.S. at 116, 122 S.Ct. at 590, Samson, 547 U.S. at 850, 126 S.Ct. at 2198*; *See Skipwith, 482 F.2d at 1277, 1281.*

In holding that the State may not rely upon the DWI Repeat Offender's statutory **[*51]** consent or enforce *section 724.012(b)(3)(B)* of the implied-consent statute, the majority does not properly account for the crucial public-safety interest at stake in deterring DWI Repeat Offenders from drunk driving as a means of thwarting the extraordinary threat resulting from this deadly recidivist activity. These interests make it reasonable to prevent a DWI Repeat Offender from withdrawing consent to a blood draw upon arrest for another DWI offense.

**Conclusion**

Today's case presents a combination of factors, compelling interests as well as limiting principles, that make the irrevocability of consent to a blood draw under *section 724.012(b)(3)(B)* reasonable in the context of a DWI Repeat Offender's arrest for a new DWI offense. Though the state's public-safety interest is compelling, even that does not provide the government with a free pass to conduct indiscriminate blood draws. There must be limiting principles for the irrevocable statutory consent to be reasonable and thus pass muster under the *Fourth Amendment*. The rationale for the rule of irrevocability in this limited circumstance is grounded on built-in statutory boundaries and restrictions that operate as a check on police power and a strong safeguard against unwarranted government intrusion. **[*52]** Summarized below, these boundaries, sewn into the fabric of the statute, provide the necessary measure of protection that makes the irrevocability of consent under *subsection (b)(3)(B)* reasonable in this narrow context.

> o The search is authorized only after police have made a **valid arrest** based on **probable cause** of a **repeat offender** in the **danger zone**.

> o The statutory provision implying consent and authorizing the search effectively functions like a warrant, tightly restricting the scope of the search by naming the single place to be searched and specifically identifying the single thing to be seized.[52]

> o The irrevocability of consent is

based upon the DWI Repeat Offender's voluntary choice to exercise, and accept the benefits of, a privilege (driving) granted by the State on condition of consent to the search.

These limiting principles, coupled with the government's compelling interests in protecting the public from the heightened risk of death or injury from recidivist drunk drivers, make it reasonable to prevent a DWI Repeat Offender arrested for drunk driving from revoking consent to a statutory blood draw.[53]

> 52    *See Maryland v. King, 133 S.Ct. 1958, 1970, 186 L.Ed.2d 1 (2013)* (noting that limits of police officer's discretion weigh in favor of constitutionality **[*53]** of search); *Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 622-25, 109 S. Ct. 1402, 1416-17, 103 L. Ed. 2d 639 (1989)* (noting that imposing a warrant requirement would add little assurance of certainty and regularity not already afforded by regulations).
> 53    *See Bailey v. U.S.,    U.S.   , 133 S.Ct. 1031, 1040, 185 L.Ed.2d 19 (2013)* (noting the importance of limiting principles).

Notably, the First Court of Appeals has concluded that "the warrantless taking of appellant's blood sample in compliance with *Transportation Code section 724.012(b)* did not violate [the defendant's] *Fourth Amendment* rights by requiring him to submit to a warrantless blood test without his consent."[54] Though several other sister courts of appeals have determined that consent under the implied-consent statute is either invalid or revocable,[55] none of them addressed the public dangers associated with allowing revocation. None of them considered the State's strong deterrence interest or the conditional nature of the driving privilege granted to DWI Repeat Offenders. None of them accounted for the reality of recidivism among DWI Repeat Offenders. And, none of them considered the built-in statutory checks and other important limiting principles at work in this special circumstance.

> 54    *Perez v. State, No.    S.W.3d  , 2014 Tex. App. LEXIS 2681, 2014 WL 943126, at *7 (Tex. App.--Houston [1st Dist.] Mar. 11, 2014, no pet.).*
> 55    *See Weems v. State, 434 S.W.3d 655, 659-64 (Tex. App.--San Antonio 2014 pet. granted); Reeder v. State, 428 S.W.3d 924, 929 (Tex. App.--Texarkana 2014, pet. granted); State v. Villarreal,   S.W.3d  , No. 13-13-00253-CR, 2014 Tex. App. LEXIS 645, 2014 WL 1257150, at *10 (Tex. App.--Corpus Christi Jan. 23, 2014, pet. granted); State v. Sutherland, 436 S.W.3d 28, 39-41 (Tex. App.--*

*Amarillo 2014, pet. filed)*; *State v. Anderson, S.W.3d , No. 09-13-00400-CR, 2014 Tex. App. LEXIS 11151, 2014 WL 5033262, at \*8-11 (Tex. App.--Beaumont Oct. 8, 2014, no pet. h.).*

This court should affirm rather than reverse the trial **[\*54]** court's judgment denying appellant's motion to suppress the evidence obtained as a result of the blood draw. Because it does not, I respectfully dissent.

/s/ Kem Thompson Frost

Chief Justice

Panel consists of Chief Justice Frost, Justices Donovan and Brown. (Brown, J., majority).

Publish--*Tex. R. App. P. 47.2(b)*

# APPENDIX B



**JONATHAN ALBERT LEAL, Appellant v. THE STATE OF TEXAS, Appellee**

**NO. 14-13-00208-CR**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*2015 Tex. App. LEXIS 6460*

**June 25, 2015, Majority and Concurring Opinions on Remand Filed**

**NOTICE:** Publish -- TEX. R. APP. P. 47.2(b).

**PRIOR HISTORY:** **[*1]** On Appeal from the 122nd District Court, Galveston County, Texas. Trial Court Cause No. 12CR0947.
*Leal v. State, 452 S.W.3d 14, 2014 Tex. App. LEXIS 12286 (Tex. App. Houston 14th Dist., 2014)*

**COUNSEL:** For Appellant: Mark W. Stevens, GALVESTON, TX.

For State: Allison Lindblade, GALVESTON, TX.

**JUDGES:** Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., concurring).

**OPINION BY:** Marc W. Brown

**OPINION**

**MAJORITY OPINION ON REMAND**

Appellant Jonathan Albert Leal appealed the trial court's denial of his motion to suppress and motion for new trial. In our original opinion reversing the trial court's judgment, we held that the warrantless blood draw violated Leal's Fourth Amendment rights. *Leal v. State, 452 S.W.3d 14, 32 (Tex. App.--Houston [14th Dist.] 2014), vacated and remanded, 456 S.W.3d 567 (Tex. Crim. App. 2015)*. On its own motion, the Court of Criminal Appeals granted review of our decision, vacated our judgment, and remanded the case to us to address only "whether appellant preserved his claim that the warrantless blood draw violated his Fourth Amendment rights." *Leal, 456 S.W.3d at 568*. Although we implicitly held in our original opinion that Leal preserved his claim, we now explicitly conclude and explain that he did so.

As a preliminary matter, because our original opinion disposed of the merits of Leal's primary arguments, we do not address them again here. *See Keehn v. State, 245 S.W.3d 614, 614 n.1 (Tex. App.--Fort Worth 2007), aff'd, 279 S.W.3d 330 (Tex. Crim. App. 2009); see, e.g., Weatherford v. State, 840 S.W.2d 727, 728-29 (Tex. App.--Eastland 1992, pet. ref'd)* (considering on remand only the issues explicitly raised by Court of Criminal Appeals). We therefore incorporate our original opinion by reference.

In order **[*2]** for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court stating the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint, and the trial court must have expressly or implicitly ruled on the request, objection, or motion. *Tex. R. App. P. 33.1(a)(1)(A)*. The complaining party must have clearly conveyed to the trial court the particular complaint raised on appeal, including the precise and proper application of law as well as the underlying rationale. *Pena v. State, 285 S.W.3d 459, 463-64 (Tex. Crim. App. 2009)*. Error preservation does not involve a hyper-technical or formalistic use of words or phrases; rather, straightforward communication in plain English is sufficient. *Id. at 464*. The party must let the trial judge know (1) what he wants; (2) why he thinks he is entitled to it; and (3) do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it. *Id.* We consider the context in which the complaint was made and the parties' shared understanding at that time. *Id.* A defendant who presents an argument to the trial judge in time for the judge to rule on it has preserved the issue for appellate review. *See Clarke v. State, 270 S.W.3d 573, 580 (Tex. Crim. App. 2008)*. **[*3]** "A trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling." *Rey v. State, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)*.

Leal's claim was preserved when the trial court implicitly overruled his amended motion to suppress. Leal timely filed an amended motion to suppress

objecting to the warrantless blood draw on Fourth Amendment grounds. *See Porath v. State, 148 S.W.3d 402, 409 (Tex. App.--Houston [14th Dist.] 2004, no pet.)* (motion to suppress is a specialized objection to the admission of evidence). Specifically, citing *Missouri v. McNeely, U.S. , 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013)*, which had not yet been decided, Leal claimed that the repeat-offender provision of the implied-consent statute violated the *Fourth Amendment*. The record shows that the trial court was aware of Leal's objection; however, the trial court did not explicitly rule on the amended motion at the suppression hearing. Leal renewed his objection at trial when the State offered a report containing an analysis of Leal's blood.[1] The trial court then admitted the report and allowed the analyst to testify regarding Leal's blood alcohol content. Based on the trial court's action in allowing the State to present evidence of Leal's blood alcohol content to the jury, the court implicitly overruled Leal's amended motion to suppress, and Leal preserved his claim that the warrantless **[*4]** blood draw violated his Fourth Amendment rights. *See Rey, 897 S.W.2d at 336-37*; *see, e.g., Cantu v. State, 994 S.W.2d 721, 730-31 (Tex. App.--Austin 1999, pet. dism'd)* (error was preserved when trial court did not expressly rule on defendant's objection to expert witness's qualifications, but permitted expert to answer the question if he knew); *Riddle v. State, No. 02-02-00231-CR, 2003 Tex. App. LEXIS 7154, 2003 WL 21983252, at *3 (Tex. App.--Fort Worth Aug. 21, 2003, pet. ref'd)* (mem. op.; not designated for publication) (error was preserved when trial court did not expressly rule on portion of defendant's motion to suppress dealing with inventory search, but allowed officer to testify before the jury about the inventory search).

> 1 When the State offered the report, Leal's counsel stated, "Subject to all prior objections, no specific objection at this time." Leal's "prior objections" included his amended motion to suppress. *See Porath, 148 S.W.3d at 409*; *cf. Bhola v. State, No. 14-09-00154-CR, 2010 Tex. App. LEXIS 4681, 2010 WL 2501116, at *4 (Tex. App.--Houston [14th Dist.] June 22, 2010, no pet.)* (mem. op.; not designated for publication) (concluding defendant did not abandon his motion to suppress when he stated at trial, "Subject to the previous objections, no objections.")

Furthermore, Leal presented his claim to the trial court in his supplemental motion for new trial. Leal was sentenced on February 14, 2013. He timely filed a motion for new trial on March 8, 2013. *See Tex. R. App. P. 21.4(a)*. The original motion did not challenge the legality of the warrantless blood **[*5]** draw. The Supreme Court decided *McNeely* on April 17, 2013. On April 22, 2013, Leal filed a supplemental motion for new trial citing *McNeely* and claiming that the warrantless blood draw violated his Fourth Amendment rights. Under *rule 21.4(b)*, the supplemental motion was not timely

filed. *See Tex. R. App. P. 21.4(b)*. On April 26, 2013, at the new-trial hearing, Leal asked for and was given leave to supplement his original motion for new trial. The State did not object. *See State v. Moore, 225 S.W.3d 556, 569 (Tex. Crim. App. 2007)* (trial court retains authority to allow untimely amendment to original motion for new trial within seventy-five-day period, so long as the State does not object). At the hearing, Leal's counsel argued, based on the Supreme Court's holding in *McNeely*, that the warrantless blood draw violated Leal's Fourth Amendment rights. The State presented counter-arguments on the merits of Leal's claim, demonstrating the parties' shared understanding that Leal's constitutional rights were at stake. *See Pena, 285 S.W.3d at 464*. The trial court denied Leal's motion for new trial in an order dated May 21, 2013.

In sum, Leal timely presented his complaint to the trial court in both his amended motion to suppress and his supplemental motion for new trial. *See Pena v. State, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011)* (complaint is timely if made as soon as ground of objection becomes **[*6]** apparent). Leal's complaint was adequately specific to put the trial court on notice of his Fourth Amendment challenge to the warrantless blood draw. *See, e.g., Gillenwaters v. State, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006)* (although motion for new trial did not mention "vague" or "vagueness," defendant's complaint was adequately specific when he claimed on several occasions during trial that the statute was "unconstitutionally vague"). The trial court ruled on Leal's complaint when it admitted, over objection, evidence obtained as a result of the warrantless blood draw and denied Leal's supplemental motion for new trial. *See Tex. R. App. P. 33.1*; *Rey, 897 S.W.2d at 336*. We therefore conclude that Leal preserved his claim that the warrantless blood draw violated his Fourth Amendment rights. Accordingly, we reverse the trial court's judgment and remand to the trial court for a new trial consistent with our original opinion. *See Leal, 452 S.W.3d at 32*.

/s/ Marc W. Brown

Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown. (Frost, C.J., concurring)

Publish -- *Tex. R. App. P. 47.2(b)*.

**CONCUR BY:** Kem Thompson Frost

**CONCUR**

**CONCURRING OPINION ON REMAND**

Appellant moved to suppress evidence of his blood-alcohol concentration by challenging the legality of a traffic stop that eventually led to his arrest for driving while intoxicated (DWI). Appellant **[*7]** later amended his motion to suppress to challenge the warrantless blood draw on Fourth Amendment grounds. On original

submission and over my dissent, this court reversed appellant's DWI conviction and remanded for a new trial.[1] Addressing an issue of first impression in this court, the majority concluded that the trial court should have suppressed evidence of appellant's blood-alcohol content because law enforcement officers obtained the evidence by means of a warrantless blood draw, which violated appellant's Fourth Amendment right to be free from unreasonable searches and seizures.[2]

1 *See Leal v. State, 452 S.W.3d 14, 32 (Tex. App.--Houston [14th Dist.] 2014), vacated, 456 S.W.3d 567 (Tex. Crim. App. 2015).*
2 *Id.*

On its own motion, the Court of Criminal Appeals granted review of this court's decision, vacated the judgment, and remanded with instructions for this court to address whether appellant preserved error on his claim that the warrantless blood draw violated his Fourth Amendment rights.[3] On remand, the majority concludes that appellant preserved error, that the trial court's judgment should be reversed, and that the case should be remanded for a new trial. I agree, but for different reasons.

3 *Leal v. State, 456 S.W.3d 567, 568 (Tex. Crim. App. 2015).*

**Preservation-of-Error Analysis**

Appellant preserved error by making a timely, specific complaint in the trial court and securing an adverse ruling.[4] **[*8]** Specifically, appellant moved the trial court to suppress evidence of his blood-alcohol content, identifying grounds for this relief in a written motion to suppress. Before the suppression hearing, appellant amended the motion to include additional grounds for relief. Though the parties' arguments at the hearing focused on another ground in the motion, to preserve error a movant need not discuss all the grounds at the hearing.[5] All that is required is specificity, timeliness, and an adverse ruling. The record establishes all three.

4 *Thomas v. State, 408 S.W.3d 877, 882 (Tex. Crim. App. 2013); Fuller v. State, 827 S.W.2d 919, 928 (Tex. Crim. App. 1992).*
5 *Eisenhauer v. State, 754 S.W.2d 159, 160-61 (Tex. Crim. App. 1988), overruled on other grounds by Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991); Cisneros v. State, 290 S.W.3d 457, 462-63 (Tex. App.--Houston [14th Dist.] 2009, pet. dism'd); Vicknair v. State, 670 S.W.2d 286, 288 (Tex. App.--Houston [1st Dist.] 1983), aff'd, 751 S.W.2d 180, 187-90 (Tex. Crim. App. 1988).*

*Specificity*

Among the grounds for suppression appellant identified in the amended motion is appellant's assertion that the warrantless blood draw was taken pursuant to a Texas statute that, as applied, violated the *Fourth Amendment*.[6] The Court of Criminal Appeals recognized that appellant's amended motion contains a challenge to the warrantless blood draw on Fourth Amendment grounds.[7] By including this ground in his amended motion to suppress, appellant identified his Fourth Amendment complaint with sufficient specificity to preserve error on the claim.[8]

6 Appellant's amended motion states:

> Challenge to Mandatory Blood Draw    The State is apparently relying on a blood **[*9]** draw taken without a warrant under *Texas Transportation Code Sec. 724.011*, as amended in 2009. The Amendment purports to provide that a mandatory blood draw may be taken where an officer has credible evidence that an individual has been previously convicted twice of DWI.
>
> The subject amendment to *Sec. 724.011* is unconstitutional on its face and as applied, as a violation of the *U.S. Constitution, Amd. VIII*, which prevents unreasonable searches and seizures.

Appellant's curious reference to the *Eighth Amendment* does not impact the preservation-of-error analysis because it is apparent from the context that appellant meant the *Fourth Amendment*. Although appellant stated that *Section 724.011* violated the *Eighth Amendment*, appellant's argument was that taking a warrantless blood draw as required by the statute violated his right under the United States Constitution to be free from unreasonable searches and seizures, and this right is set forth in the *Fourth Amendment to the United States Constitution. See U.S. Const. amend. IV*. The motion contains no Eighth Amendment arguments, and the odd reference appears to be a typographical error.
7 *See Leal, 456 S.W.3d at 568.*
8 *See Thomas, 408 S.W.3d at 882.*

*Timeliness*

The record shows the following chronology of events relevant to the preservation-of-error analysis:

At the time of the hearing, the only live motion pending before the trial court was the amended motion to

suppress.[9] The moment appellant filed the amended motion, the original motion **[*10]** ceased to exist. In the context of legal pleadings and motions, an amended instrument is a substitute for the original; the old and new instruments do not co-exist--the latter takes the place of the former. This defining feature of an amended motion distinguishes it from a supplemental motion, which is an addition rather than a replacement.[10] Because the amended motion superseded and supplanted the original motion,[11] the original motion could no longer be considered.[12] Thus, when the trial court denied the motion to suppress, the trial court denied the only pending motion--appellant's First Amended Motion to Suppress.[13] In that motion appellant raised the claim this court adjudicated on original submission. The trial court denied the motion at the suppression hearing during trial, before admitting the blood-alcohol evidence. Thus, appellant's objection was timely.

9    In its opinion, the Court of Criminal Appeals stated that the suppression hearing pertained to the original motion to suppress rather than the amended motion to suppress. *Leal, 456 S.W.3d at 568.* Nothing in the record suggests that appellant withdrew the amended motion or that appellant refiled the original motion, or that appellant took any other action **[*11]** that might arguably have brought the superseded motion back to life. The amended motion contained all of the grounds asserted in the original motion as well as additional grounds. The suppression hearing focused on a ground contained in the original motion, but at the time of the hearing the original motion was a nullity, having been replaced by operation of law upon the filing of the amended motion, which also contained the ground that was the focus of the hearing. See *Steere v. State, 445 S.W.2d 253, 253 (Tex. App.--Houston [1st Dist.] 1969, writ dism'd).*

10    A supplemental motion is an addendum to the original motion. *Cf. Tex. R. Civ. P. 62-65. See also* BLACK'S LAW DICTIONARY 1438, 1439 (6th ed. 1990) (defining "supplemental" as "That which is added to a thing to complete it," and noting that supplemental affidavits, answers, complaints, and pleadings, add to the original). But, an *amended* motion is a substitute--a replacement--for the original. See *Riney v. State,28 S.W.3d 561, 565-66 (Tex. Crim. App. 2000)* (noting that once indictment was amended it became the "official" indictment in the case); *see also Eastep v. State, 941 S.W.2d 130, 132-33 (Tex. Crim. App. 1997)*(holding that, in the context of indictment, an amendment is an alteration to the face of the charging instrument which affects the substance of the charging instrument), *overruled on other grounds by Riney, 28 S.W.3d at 561.*

11    *Steere, 445 S.W.2d at 253*; *cf. Herrera v. State, 951 S.W.2d 197, 198-99 (Tex. App.--*

Corpus Christi 1997, no pet.).
12    *Steere, 445 S.W.2d at 253.*
13    *See id.*

### Adverse Ruling

At the end of the **[*12]** suppression hearing, the trial court denied the pending motion to suppress, which was the amended motion, thus rejecting all grounds contained in that motion. Even though arguments at the hearing focused on another ground for suppression of the blood-alcohol evidence, appellant preserved error on all grounds contained in the amended motion, including the Fourth Amendment ground he now asserts on appeal. To preserve error, it was not necessary for appellant to argue that ground at the hearing.[14] At the conclusion of the hearing, the trial court refused to suppress the evidence and denied the pending motion (First Amended Motion to Suppress) in its entirety. Thus, appellant secured the requisite adverse ruling to preserve error.

14    *See Eisenhauer, 754 S.W.2d at 160-61*; *Cisneros, 290 S.W.3d at 462-63*; *Vicknair, 670 S.W.2d at 288.*

### Absence of Waiver

Though a party moving to suppress evidence may waive a ground contained in the motion at the hearing on the motion, no such waiver occurred. At the suppression hearing, appellant did not state or otherwise indicate that he was waiving or withdrawing his constitutional challenge to the blood-draw statute. Nor did appellant state that he was urging only the grounds that he argued or mentioned at the suppression hearing. The State did not object to appellant's **[*13]** amendment of the motion to suppress, nor did the State argue that the trial court should not consider appellant's constitutional challenge to the blood-draw statute. Nor did the trial court refuse to consider it.

Though appellant did not devote argument to his constitutional challenge to the blood-draw statute in his oral presentation to the trial court, the evidence adduced at the suppression hearing included the following:

1. when asked to voluntarily provide a blood sample, appellant refused to do so;

2. Officer Hodges was required by the blood-draw statute to have a blood sample taken from appellant;

3. appellant was taken to a hospital emergency room where a blood sample was taken;

4. just before the blood draw, appellant stated that he wanted his attorney present during the blood draw; and

5. appellant was "uncooperative

during the blood draw."[15]

15  At one point, appellant's counsel asked Officer Hodges how many people held appellant down during the blood draw, and Officer Hodges answered "three." Without striking the testimony, the trial court then stated "Let's not go there right now. I want to hear just Motion to Suppress issues." Appellant's counsel did not respond to this statement [*14] and continued his examination of the witness. It is not clear what the trial court meant by this comment. The trial court may have meant that the number of people who held appellant down while his blood was drawn over appellant's objection was not relevant to any issue in the amended motion to suppress, including the challenge to the mandatory blood-draw statute. Even presuming that the trial court was expressing a belief that there was no issue in the amended motion to suppress regarding the blood-draw statute, appellant's counsel never expressed any agreement with this belief.

During the suppression hearing, appellant's counsel stated that the prosecutor and he had agreed to first present evidence regarding the validity of the stop and then present evidence regarding other issues. After the parties each presented the validity-of-the-stop evidence, each side presented additional evidence, and appellant argued that one or more of his statements that the State wanted to use against him at trial were made after he requested a lawyer. No further evidence was presented. Near the end of the hearing, as the lunch break drew near, the trial court asked counsel if there was anything else "we [*15] need to talk about right now." Appellant's counsel responded "No, not here." To preserve error, however, appellant was not required to talk about his constitutional challenge to the blood-draw statute at the suppression hearing when appellant had presented the ground by means of his written motion to suppress.[16] Appellant's counsel did nothing at the suppression hearing sufficient to waive the challenge to the blood-draw statute contained in the amended motion.

16  See Eisenhauer, 754 S.W.2d at 160-61; Cisneros, 290 S.W.3d at 462-63; Vicknair, 670 S.W.2d at 288.

### Disposition of the Appeal

On original submission, I concluded in a dissenting opinion that the warrantless blood draw did not violate appellant's right to be free from unreasonable searches and seizures because appellant impliedly consented to the blood draw under *Texas Transportation Code section 724.012(b)(3)(B)*.[17] After this court issued its judgment,

the Court of Criminal Appeals issued its opinion in *State v. Villarreal*.[18] In *Villarreal*, the high court held that implied consent under *Texas Transportation Code section 724.012(b)* "cannot substitute for the free and voluntary consent that the *Fourth Amendment* requires."[19] Since then, the Court of Criminal Appeals has granted the State's motion for rehearing in *Villarreal*, and ordered the case resubmitted so that the high court could consider the arguments presented by the State in [*16] its rehearing motion. To date, the Court of Criminal Appeals has not withdrawn or changed its opinion or judgment in *Villarreal*, nor has the court issued a new opinion or judgment. In this context, the Fourteenth Court of Appeals still is bound by the majority opinion in *Villareal*. Under that standing precedent, the trial court's judgment in the case under review must be reversed and the case remanded for a new trial.[20]

17  See Leal v. State, 452 S.W.3d 14, 32-40 (Tex. App.--Houston [14th Dist.] 2014), vacated, 456 S.W.3d 567 (Tex. Crim. App. 2015).
18  See  S.W.3d  , 2014 Tex. Crim. App. LEXIS 1898, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) (reh'g granted).
19  2014 Tex. Crim. App. LEXIS 1898, [WL] at *11.
20  See Villarreal,  S.W.3d at  , 2014 Tex. Crim. App. LEXIS 1898, 2014 WL 6734178 at *8-21; State v. Tercero,  S.W.3d  ,  , 2015 Tex. App. LEXIS 3284, *5, 2015 WL 1544519, at *2-6 (Tex. App.--Houston [1st Dist.] Apr. 2, 2015, no pet. h.) (applying Villarreal as binding precedent after rehearing motion was granted by the Court of Criminal Appeals in Villarreal).

### Conclusion

The record shows that appellant made a timely, specific complaint that the warrantless drawing of his blood violated his Fourth Amendment right to be free from unreasonable searches and seizures, and secured an adverse ruling. Appellant preserved error as to this complaint. Under binding precedent from the Court of Criminal Appeals, this court must conclude that appellant did not impliedly consent for Fourth Amendment purposes to the blood draw under *Texas Transportation Code section 724.012(b)(3)(B)* and that the warrantless blood draw violated appellant's Fourth Amendment rights. Thus, I respectfully concur in the court's judgment on remand.

/s/ Kem Thompson Frost

Chief Justice [*17]

Panel consists of Chief Justice Frost and Justices Donovan and Brown (Brown, J., majority).

Publish -- TEX. R. APP. P. 47.2(b).

# APPENDIX C

No. 12CR0947

STATE OF TEXAS

V.

JONATHAN LEAL

IN THE 122ND DISTRICT 8 AM 11: 41

COURT OF

GALVESTON CO., TEXAS

## FIRST AMENDED MOTION TO SUPPRESS

TO THE HONORABLE JUDGE OF SAID COURT:

1. Defendant Jonathan Leal hereby moves to suppress the stop of his automobile and the fruits of all subsequent searches and or interrogations under the Fourth Amendment to the United States Constitution; the Texas Constitution, art, I, Sec. 9, and in support would show the following:

2. On the date alleged in the information, a peace officer stopped Defendant ostensibly for a moving traffic violation and more particularly for "reckless driving."

3. There was no basis, whether reasonable suspicion or otherwise, for which to stop the Defendant. The Reports of the officer in question clearly indicate that any unusual behavior which the officer may have observed took place on private property, and were not subject to the officer's lawful authority. The officer in his report did not articulate any conduct or behavior on a public road which would have subjected Defendant to a lawful traffic stop.

12 – CR – 0947
DCMOTSU
Motion to Suppress
577141

## Challenge to Mandatory Blood Draw

The State is apparently relying on a blood draw taken without a warrant under Texas Transportation Code Sec. 724.011, as amended in 2009. The Amendment purports to provide that a mandatory blood draw may be taken where an officer has credible evidence that an individual has been previously convicted twice of DWI.

The subject amendment to Sec. 724.011 is unconstitutional on its face and as applied, as a violation of the U.S. Constituion, Amd. VIII, which prevents unreasonable searches and seizures.

This matter is presently under review before the U.S. Supreme Court. *Missouri v. McNeely*, USSC Docket No. 11-1425, was argued on January 9, 2013. Briefly, the Supreme Court of Missouri apparently ruled that a warrantless blood draw violated the Eighth Amendment, and the U.S. Supreme Court granted cert. The publicly available recording of the arguments before the U.S. Supreme Court on January 9, 2013 suggest that a significant number of justices were openly concerned with the prospect of a government official approaching an unwilling citizen with a needle. Such information is not of course binding or in many instances predictive of the ultimate ruling, but they do suggest that the issue is a close one and should be carefully reviewed before this court commits resources to a trial which may be fatally flawed from the beginning.

## Prayer

Wherefore, premises considered, Defendant prays that the traffic stop in question and all fruits thereof, including contact with the Defendant and any resulting blood alcohol content test, be suppressed.

2

79

Defendant also prays specifically that the warrantless blood draw and all fruits therof be suppressed for violation of the U.S. Constitution, Amd. VIII.

Respectfully submitted,

Mark W. Stevens
TBN 19184300
P.O. Box 8118
Galveston, Texas 77553
409.765.6306
Fax 409.765.6469
Counsel for Defendant

Certificate of Service

A true and correct copy of the foregoing instrument was served on Daniel Lazarine, ADA, via fax 766 2290 on February 8, 2012.

Mark W. Stevens

3